# IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LISA BRIDGE, | ) | CASE NO. |
| 9099 Fairmount Blvd. | ) | |
| Novelty, Ohio 44072 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| - vs - | ) | |
| | ) | |
| OCWEN FEDERAL BANK, FSB | ) | (Jury Demand) |
| 12650 Ingenuity Drive | ) | |
| Orlando, FL 32826 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| OCWEN FEDERAL LOAN | ) | |
| SERVICING COMPANY | ) | |
| 12650 Ingenuity Drive | ) | |
| Orlando, FL 32826 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| OCWEN FINANCIAL CORPORATION | ) | |
| 12650 Ingenuity Drive | ) | |
| Orlando, FL 32826 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| OCWEN LOAN SERVICING, LLC | ) | |
| 12650 Ingenuity Drive | ) | |
| Orlando, FL 32826 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AAMES CAPITAL CORPORATION | ) | |
| 350 S. Grand Avenue | ) | |
| 43rd Floor | ) | |
| Los Angeles, CA 90071-3406 | ) | |

|   |   |
|---|---|
| and | ) |
|  | ) |
|  | ) |
| FIRSTAR BANK, N/K/A US BANCORP | ) |
| c/o Thomas J. Sherman, Agent | ) |
| 255 East Fifth Street, Suite 1900 | ) |
| Cincinnati, Ohio 45202 | ) |
|  | ) |
| Defendants. | ) |

Now comes Plaintiff, by and through counsel, and for her Complaint against Defendants, states as follows:

## JURISDICTION AND VENUE

1. This action arises, *inter alia*, out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA"), the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101-6108, et seq., the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. §§ 2607, et seq., and the Truth In Lending – Homeowner Equity Protection Act, 15 U.S.C. §§ 2301 et seq.

2. This court has jurisdiction over this matter pursuant to 12 U.S.C. § 2614, 15 U.S.C. §§ 1692k(d) and 6101, 28 U.S.C. §§ 1331 and 1337(a), 47 U.S.C. § 227(f)(2), and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

3. Venue in this matter is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. Venue is also proper in this judicial district pursuant to 47 U.S.C. § 227(f)(4), in that the Defendants transact business in this district and violations of the TCPA and the Ohio statues are occurring in this district.

## PARTIES AND NATURE OF THE ACTION

4. Plaintiff is the owner of the property at the address listed in this Complaint.

5. Defendants Ocwen Federal Bank, FSB, Ocwen Federal Loan Servicing Company, Ocwen Loan Servicing, LLC and/or Ocwen Financial Corporation (collectively, "Ocwen"), claim to be the current holder of a note and mortgage on Plaintiff's home, entered into on December 7, 2001.

6. Plaintiff presently is, and at all times relevant to this cause of action was, an Ohio domiciliary and resident of Novelty, Ohio. Plaintiff entered into a consumer loan for the premises with Defendant Aames Capital Corporation ("Aames"), which loan was subsequently allegedly transferred by assignment or otherwise to Ocwen.

7. Plaintiff relied upon the integrity of Aames, Ocwen or their agents as to their representations, including, without limitation, those contained in a federal Truth in Lending statement furnished Plaintiff, and was induced by written representations of Aames, Ocwen or their agents in order to proceed to closing on the loan. Ocwen, if it is an assignee of Aames, is also bound by any representations made to Plaintiff by Aames.

8. More particularly, as set forth below, these representations were false or materially misleading.

9. Plaintiff Lisa Bridge is interchangeably referred to as "Plaintiff" for purposes of this litigation where necessary.

## DEFENDANTS

10. Ocwen Financial Corporation (hereinafter "Ocwen Financial") is, upon information and belief, a publicly held financial services company headquartered in West Palm Beach, Florida.

11. Ocwen Financial is, upon information and belief, a holding company for Ocwen Federal Bank FSB ("Ocwen Bank"), a federally chartered savings bank engaged in discounted loan acquisition and residential and commercial lending. Ocwen Federal Loan Servicing Company and Ocwen Loan Servicing, LLC are, upon information and belief, related entities of either or both Ocwen Financial or Ocwen Bank.

12. The primary business of Aames and Ocwen is the servicing and special servicing of nonconforming, subperforming and nonperforming residential and commercial mortgage loans.

13. Aames and Ocwen service billions of Dollars worth of management intensive single-family residential loans.

## VENUE

14. Venue is proper in the Northern District of Ohio under 28 U.S.C. § 1391 because many of the incidents, events, or omissions complained of and giving rise to the instant claim or controversy occurred within this district.

15. Moreover, Aames and Ocwen are business entities doing substantial business in the Northern District of Ohio, because Ocwen's mortgage loans were the principal product of a corporation intentionally doing business in Ohio.

16. Additionally, as to all Defendants, substantial portions of the transactions complained of herein occurred in Ohio and Defendants' products and services were advertised, promoted, sold, and distributed in, or their collection, foreclosure or transfer efforts directed to, Ohio residents.

17. Aames and Ocwen originate or acquires consumer mortgages, which loans are then self-serviced, or sold and transferred.

18. Typically, mortgages are made to consumers with subprime credit who have had a difficult time qualifying for mortgages at conventional rates.

19. These loans are primarily secured by first mortgages on consumers' homes.

20. Aames and Ocwen charge substantial prepaid finance charges, such as loan origination fees, underwriting fees, loan processing fees and other fees, in exchange for extensions of credit.

21. Aames' and Ocwen's mortgage practices have long been the subject of complaints of unconscionably high rates of collection and/or foreclosure, creditor harassment, unfair debt collection practices, and mortgage loan transfers to third parties or *inter sese* just after the borrower complains about major accounting errors or threatens legal action.

## ALLEGATIONS COMMON TO ALL CLAIMS

22. Plaintiff entered into a loan agreement with Aames on December 7, 2001.

23. Thereafter, until April, 2002, Plaintiff made timely loan payments to Aames.

24. In April, 2002, due to a bank error, Firstar Bank dishonored Plaintiff's personal check issued to pay the Aames loan.

25. Plaintiff timely issued an official check drawn on Defendant Firstar Bank dated April 8, 2002, as replacement for the dishonored personal check.

26. Aames returned this official check "NSF" and contacted Plaintiff on April 22, 2002, whereupon Plaintiff immediately transmitted yet another official Firstar check in the full amount to Aames.

27. In the interim, either Aames or Ocwen caused the original personal check, for which Plaintiff had ordered payment stopped, to be marked "force paid" and the check was re-presented to Firstar, which honored the check.

28. At the same time, Aames assigned or otherwise transferred Plaintiff's loan to Ocwen effective May 1, 2002.

29. After May 1, 2002, Aames transmitted to Plaintiff a RESPA required notice of the transfer of the loan to Ocwen.

30. Thereafter, neither Aames nor Ocwen would acknowledge receipt of the double payment for April, 2002, and Ocwen instead began dunning Plaintiff for the allegedly overdue May, 2002 payment.

31. On May 9, 2002, after Plaintiff had supplied both Aames and Ocwen with the information required to demonstrate the double payment, Plaintiff transmitted a Qualified Written Request as provided under RESPA to Ocwen demonstrating once again that the both the personal check and the replacement Firstar official check were paid and deducted from Plaintiff's Firstar account in April, 2002.

32. Ocwen later acknowledged receipt only of the official check; but not the personal check. Ocwen then began a series of automated dialer telephonic collection calls to Plaintiff at home and to Plaintiff's cellular phone.

33. On July 1, 2002, Plaintiff transmitted a "do not call" letter to Ocwen instructing it to place Plaintiff on its "Do Not Call" list and again informing Aames and Ocwen of the failure to properly credit Plaintiff with the timely loan payments.

34. Ocwen responded by threatening Plaintiff with foreclosure if Plaintiff did not make the additional payments.

35. In addition, Ocwen has been charging Plaintiff a late fee each month since May, 2002, making false representation of the character, amount, or legal status of the alleged debt owed by Plaintiff, threatening to take action that could not legally be taken, including, without

6

limitation, foreclosure, making false representations or implying that Plaintiff has acted wrongfully in order to disgrace her, and using false representations or deceptive means to collect or attempt to collect the alleged debt.

36. From July, 2002 through the date of filing of this Complaint, Ocwen has called Plaintiff at various telephone numbers, approximately twice to five times daily, five to seven days per week, each time leaving a recorded message on Plaintiff's home or telephone voicemail.

37. From July, 2002 through the date of filing of this Complaint, Ocwen has falsely reported to all three major credit reporting services, derogatory information concerning Plaintiff's credit worthiness and alleged lack of timely payments.

38. From July, 2002 through the date of filing of this Complaint, Ocwen has charged Plaintiff numerous excessive and unjustified "late charges" of at least $400.00 each.

## FIRST CLAIM FOR RELIEF
(Fair Debt Collection Practices Act)

39. Plaintiff reiterates the statements and allegations of the preceding paragraphs of this Complaint as if expressly rewritten herein.

40. The statements made by Aames and Ocwen are to be interpreted under the ? least sophisticated debtor? test. Smith v. Computer Credit. Inc., 167 F.3d 1052, 1054 (6th Cir. 1999); Smith v. Transworld Systems, Inc., 953 F.2d 1025, 1029 (6th Cir. 1992).

41. Aames and Ocwen violated the FDCPA by the use of false, deceptive, or misleading representations or means in connection with the collection of the debt allegedly owed by Plaintiff. Such conduct constitutes a false representation of the character, amount, or legal status of any debt, pursuant to 16 U.S.C. ?1692e(2)(A).

42. The conduct of Aames and Ocwen further constitutes a threat to take any action that cannot legally be taken or that is not intended to be taken, pursuant to 16 U.S.C. ?1692e(5).

43. The conduct of Aames and Ocwen further constitutes a false representation or implication that Plaintiff committed a crime or other wrongful conduct in order to disgrace her, pursuant to 16 U.S.C. ?1692e(7).

44. The conduct of Aames and Ocwen further constitutes the use of a false representation or deceptive means to collect or attempt to collect any debt or to obtain information as to its source, authorization, or approval, pursuant to 16 U.S.C. ?1692e(9); concerning a consumer, pursuant to 16 U.S.C. ?1692e(10)

45. The foregoing violations of ?1692g(e) of the FDCPA render Aames and Ocwen liable for statutory damages, costs, and reasonable attorneys? fees pursuant to ?1692k of the FDCPA.

## SECOND CLAIM FOR RELIEF
(Telephone Consumer Protection Act)

46. Plaintiff reiterates the statements and allegations of the preceding paragraphs of this Complaint as if expressly rewritten herein.

47. Aames and Ocwen violated the TCPA, 47 U.S.C. 227, as amended, through the use of an autodialer telephone, computer or other device to send unsolicited messages to Plaintiff.

48. The actions of Aames and Ocwen as alleged herein are willful and ongoing, and continued after Plaintiff specifically demanded in writing to be placed on Ocwen's "Do Not Call" list.

49. Aames and Ocwen have further violated and continue to violate the TCPA, 47 U.S.C. 227(b)(1)A)(iii), which makes it unlawful for any person within the United States to make any call using any automatic dialing telephone system to any telephone number assigned to

a cellular telephone service, other than a call made for emergency purposes or made with the prior express consent of the called party.

    50.    Aames and Ocwen are liable to Plaintiff for the statutory penalty for each violation, together with treble damages owing to the willful nature of their actions.

THIRD CLAIM FOR RELIEF
(Telemarketing and Consumer Fraud and Abuse Prevention Act)

    51.    Plaintiff reiterates the statements and allegations of the preceding paragraphs of this Complaint as if expressly rewritten herein.

    52.    The conduct of Aames and Ocwen as alleged herein further violates the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101-6108, which prohibits them from engaging in any act or practice in violation of any provision of a federal act or rule, including, without limitation, the Telemarketing and Consumer Fraud and Abuse Prevention Act, the Telephone Consumer Protection Act of 1991, any amendment or reenactment of either of those Acts, any rule adopted or issued pursuant to either of those Acts, or any amendment of that rule.

    53.    Aames and Ocwen are liable to Plaintiff for the statutory penalty for each violation, together with treble damages owing to the willful nature of their actions, not to exceed any maximum allowable amount of damages or civil penalty that is specified in any applicable federal act or rule.

FOURTH CLAIM FOR RELIEF
(Real Estate Settlement Procedures Act of 1974)

    54.    Plaintiff reiterates the statements and allegations of the preceding paragraphs of this Complaint as if expressly rewritten herein.

55. Upon the transfer of Plaintiff's loan from Aames to Ocwen, Ocwen altered either the monthly payment amount or the accounting method used by Aames; but failed to provide Plaintiff with an initial escrow account statement within 60 days of the date of transfer, or at any time thereafter.

56. The foregoing failure to provide Plaintiff with an initial escrow account statement – which would have revealed Plaintiff's double payment in April, 2002 – constitutes a violation of RESPA.

57. Aames and Ocwen also failed properly to respond to Plaintiff's "Qualified Written Request" to provide an accurate accounting of Plaintiff's payments to Aames and Ocwen pursuant to RESPA within sixty days of the date of the request. 12 U.S.C. § 2605(e). provide written acknowledgment within twenty business days and must take certain specified actions within sixty business days after receiving the inquiry.

58. During the sixty-business-day period following receipt of Plaintiff's qualified written request relating to the disputed April, 2002 payment, Aames and Ocwen provided information to consumer credit reporting agencies regarding alleged overdue payments relating to this period.

59. The foregoing reporting of information to consumer credit reporting agencies constitutes a further violation of RESPA.

60. Aames and Ocwen are liable to Plaintiff for all of the actual damages she suffered as a result of such violations of RESPA. 12 U.S.C. § 2605(f).

### FIFTH CLAIM FOR RELIEF

(Truth In Lending – Homeowner Equity Protection Act)

61. Plaintiff reiterates the statements and allegations of the preceding paragraphs of this Complaint as if expressly rewritten herein.

62. Aames and Ocwen were required to issue Truth in Lending Act notices to Plaintiff on an ongoing basis.

63. Among those disclosures, Aames and Ocwen were required to inform Plaintiff of the amount of her periodic payment due on the loan.

64. Aames and Ocwen issued materially false disclosures to Plaintiff.

65. Such disclosures were not meaningful, and were not clear and conspicuous.

66. The foregoing constitute violations of the Truth In Lending – Homeowner Equity Protection Act, 15 U.S.C. §§ 2301 et seq.

### SIXTH CLAIM FOR RELIEF

(Claim against Firstar Bank n/k/a US Bancorp)

67. Plaintiff reiterates the statements and allegations of the preceding paragraphs of this Complaint as if expressly rewritten herein.

68. Firstar chose to honor the dishonored check upon re-presentment by Aames, even though Aames was not a holder in due course.

69 Firstar debited Plaintiff's account both for the dishonored check and/or the first official Firstar replacement check, which was returned "NSF" by Aames, and the second Firstar replacement check which was acknowledged to have been accepted by Aames.

70. Firstar's actions violated its customer agreement as well as the Uniform Commercial Code insofar as it pertains to payment of stop payments and finally paid items, all of

which has directly and proximately caused Plaintiff damages.

WHEREFORE, Plaintiff Lisa Bridge demands judgment on her claims for damages in an amount which has yet to be ascertained but which will be determined at trial, together with interest, costs, attorney's fees and such other and further relief as this Court deems just and proper under the circumstances.

Respectfully submitted,

_____/s_____
JOHN A. HUETTNER (0039479)
20521 Chagrin Blvd., Suite 200
Shaker Heights, Ohio 44122
(216) 991-7640

Attorneys for Plaintiff Lisa Bridge

## JURY DEMAND

Plaintiff hereby demands a trial of all issues so triable before the maximum number of jurors permitted by law.

_____/s_____
JOHN A. HUETTNER (0039479)