**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **LISA BRIDGE** | :   **CASE NO.: 1:07-CV-02739** |
| **9099 Fairmont Road** | : |
| **Novelty, Ohio 44072,** | : |
| | :   **JUDGE DAVID D. DOWD, JR.** |
| **~ and ~** | : |
| | : |
| **WILLIAM BRIDGE** | : |
| **9099 Fairmont Road** | : |
| **Novelty, Ohio 44072,** | : |
| | : |
| **Plaintiffs,** | : |
| | : |
| **~ vs ~** | : |
| | : |
| **OCWEN FEDERAL BANK, FSB.** | :   <u>**PLAINTIFFS' THIRD**</u> |
| **12650 Ingenuity Drive** | :   <u>**AMENDED COMPLAINT**</u> |
| **Orland, Florida 32826,** | : |
| | :   **(JURY DEMAND ENDORSED** |
| **~ and ~** | :   **HEREON)** |
| | : |
| **OCWEN LOAN SERVICING, LLC** | : |
| **12650 Ingenuity Drive** | : |
| **Orlando, Florida 32826,** | : |
| | : |
| **~ and ~** | : |
| | : |
| **DEUTSCHE BANK NATIONAL TRUST CO.,** | : |
| f/k/a **BANKERS TRUST COMPANY OF** | : |
| **CALIFORNIA** | : |
| **60 Wall Street** | : |
| **New York, New York 10005,** | : |
| | : |
| **Defendants.** | : |

**NOW COME** the Plaintiffs, by and through their undersigned counsel, and for their Third Amended Complaint state as follows:

## JURISDICTION AND VENUE

1.      This action arises, *inter alia*, out of Defendants' multitude of violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") ; and, out of Defendant's multitude of violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

2.      This Court has jurisdiction over this matter pursuant to 12 U.S.C. § 264, 15 U.S.C. § 1692k(d) and 6101, 28 U.S.C. § 1331 and 1337(a), 47 U.S.C. § 227(f)(2), and pursuant to 28 U.S.C. § 1367 for the pendent state law claims.

3.      This Court has subject matter and federal question jurisdiction over the multitude of Plaintiffs' TCPA claims violations, pursuant to 28 U.S.C. § 1331 [See: *Charvat v. NMP, LLC*, 656 F. 3d 440 (6th Cir 2011)].

4.      This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 and the amount in controversy exceeds $75,000.00 exclusive of interests and costs.

5.      Venue in this matter is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.  Venue is also proper in this judicial district pursuant to 47 U.S.C. § 227(f)(4), in that the Defendants transacted business in this district and violations of the FDCPA, and the TCPA, and the violations of the Ohio Consumer Sales Practice Act (OCSPA) statutes and the pendent common law state claims have occurred in this district.

## PARTIES

6.      Ocwen Federal Bank FSB ("Ocwen Bank") is a federally chartered savings bank engaged in discount loan acquisitions and residential and commercial lending.

Upon information and belief, Ocwen Loan Servicing, LLC is a wholly owned subsidiary of Ocwen Bank, established to "service" residential mortgage loans acquired by Ocwen Bank by assignment or transfer from other mortgage companies or banks.  It is also upon information and belief that Ocwen Loan Servicing, LLC is no more than the "alter ego" of Ocwen Bank, with a commonality of officers, board members and/or directors, established to shield Ocwen Bank from liability for the numerous violations of Federal and State law hereinafter set forth.  As such, the Defendants Ocwen Federal Bank, FSB and Ocwen Loan Servicing, LLC will be collectively referred to as "Ocwen Bank".  At all relevant times hereto, Ocwen Bank was a "debt collector" within the meaning of FDCPA, and a "supplier" within the meaning of OCSPA at R.C. § 1345.01(C).

7.     Alternatively, Ocwen Loan Servicing, LLC is a federally chartered savings bank engaged in discount loan acquisitions and residential and commercial lending. Ocwen Loan Servicing, LLC is, upon information and belief, a division of Defendant Deutsche Bank and is a publically held company headquartered in Orlando, Florida. Ocwen Loan Servicing, LLC conducts substantial business in the State of Ohio, and is a debt collector within the meaning of FDCPA, and a supplier within the meaning of Ohio's Consumer Sales Practices Act ("OCSPA") at R.C. § 1345.001(C).

8.     Ocwen Bank is upon information and belief a division of Defendant Deutsche Bank National Trust Company ("Deutsche").  Deutsche is upon information and belief a federally charted savings bank engaged in discounted loan origination and acquisition of residential and commercial lending.  Deutsche is upon information and belief headquartered in New York, New York and conducts substantial business in the State of Ohio.  Deutsche alleges to be the Trustee for "Ames Mortgage Trust 2001 -

Mortgage Pass Through Certificates, Series 2001".  At all relevant times Deutsche was a "debt collector" within the meaning of the FDCPA and a "supplier" within the meaning of Ohio's Consumer Sales Practice Act ("OCSPA") at R.C. § 1345.01(C).  At all relevant times, Deutsche has transacted business in the State of Ohio, in violation of Ohio law, and as such, lacks standing to bring any claim or counterclaim in any Court in the State of Ohio, in its name or on its behalf.

9.      Ocwen Bank is upon information and belief, a publicly held company headquartered in Orlando, Florida that conducts substantial business in the State of Ohio, in violation of Ohio law, and as such, Ocwen Bank lacks standing to bring any claim or counterclaim in any court in the State of Ohio, in its name or on its behalf.

10.     Plaintiff Lisa Bridge, is the owner of the property located at 9099 Fairmont Road, Novelty, Ohio.  Plaintiff William Bridge is Plaintiff Lisa Bridge's husband, who at all relevant times, cohabitated with and resided with his wife at 9099 Fairmont Road.  At all relevant times Lisa Bridge and William Bridge were "consumers" within the meaning of FDCPA and "consumers" within the meaning of OCSPA at R.C. § 1345.01(D).

## FACTUAL BACKGROUND

11.     On or about December 7, 2001, Plaintiff Lisa Bridge entered into a loan agreement with Aames for the property located at 9099 Fairmont Road, Novelty, Ohio, whereby Lisa Bridge executed a promissory note in the approximate principal amount of $460,000.00, to Aames.  This debt was created primarily and exclusively for personal, family and household purposes, and was secured by a mortgage to Aames on the property located at 9099 Fairmont Road, Novelty, Ohio identifying Lisa Bridge as "Borrower" and/or "Mortgagor".

12.     The Plaintiffs are to be treated as the "least sophisticated consumer" and/or the "least sophisticated debtor" in accordance with Ohio and federal law.

13.     On or about April 15, 2002, Aames notified Lisa Bridge that the servicing of her mortgage loan was assigned, sold or transferred to Ocwen Federal Bank, FSB, effective April 30, 2002.  It is the Plaintiffs information and belief that no assignment, sale or transfer was ever made to Ocwen Bank; and, if made, was never duly recorded with the Office of the Geauga County Recorder, in violation of Federal and State law.  In fact, and as alleged above, it was Deutsche that is alleged to be the Trustee for the benefit of the holders of "Aames Mortgage Trust 2002-1 Mortgage Pass Through Certificates, Series 2001-1".

14.     Prior to Aames' April 15, 2002 notification to Lisa Bridge of the assignment, sale or transfer of servicing rights to Ocwen Bank, Lisa Bridge was never in default and was never notified in writing or otherwise, of a default on her mortgage.

15.     In April 2002, due to a bank error, previously dismissed Defendant Firstar Bank k/n/a US Bank NA ("Firstar") dishonored Lisa Bridge's personal check issued to pay the April, 2002 Aames monthly mortgage obligation.

16.     Lisa Bridge timely issued an official check drawn on previously dismissed Defendant Firstar Bank dated April 8, 2002, as replacement for improperly dishonored personal check tendered for the April, 2002 monthly mortgage obligation.

17.     Aames negotiated the April 8, 2002 official check, but never credited Lisa Bridge the amount of $3,692.82 for her April, 2002 mortgage payment.  The April 8, 2002 official check, for reasons unknown to Plaintiffs, was not paid by previously dismissed Defendant First Star Bank, and on or around April 20, 2002 Aames notified

- 5 -

Lisa Bridge of a default under the terms of her mortgage loan, further notified Lisa Bridge of a $376.98 penalty and/or late fee, notified Lisa Bridge of additional penalties and interest including loan acceleration (a veiled threat of foreclosure) and notified Lisa Bridge that the overdue amount for April, 2002 of $4,063.20 was due on or before May 21, 2002.

18.     In response to Aames' April 20, 2002 letter, Lisa Bridge sent a third payment for her April, 2002 mortgage obligation to Aames in the form of a second official check dated April 20, 2002, in the amount of $3,692.82.  At no time did this second official check get returned by the issuing bank unpaid; however, Aames failed to account for or credit Lisa Bridge with this second official check payment, for Lisa Bridge's April, 2002 mortgage loan obligation.

19.     In the interim, either Aames or Ocwen Bank caused the original personal check, for which Plaintiff had ordered payment stopped, to be marked "force paid" and the check was re-presented to Firstar, which ultimately honored Lisa Bridge's personal check.

20.     Lisa Bridge provided Aames with two official bank checks for her April, 2002 payment, which were negotiated and presented by Aames.  Aames also negotiated and presented Lisa Bridge's personal check for her April 2002 payment.  At least one of the official checks and also the personal check were ultimately paid by the issuing bank, previously dismissed Defendant First Star Bank.  Aames received two (2) full monthly mortgage payments for the month of April, 2002.

21.     On May 1, 2002, when Ocwen Bank assumed the "servicing" of Lisa Bridge's mortgage, both Aames and Ocwen Bank treated Lisa Bridge's mortgage as if it

was in default, and thereafter, engaged in a designed, malicious, illegal combination and civil conspiracy, later joined by Deutsche, to violate the FDCPA and the OSCPA, as more fully alleged, *infra*.

22.     Thereafter, neither Aames nor Ocwen Bank would acknowledge receipt of the double payment for April, 2002, and Ocwen Bank instead began dunning both Plaintiffs for the allegedly overdue May, 2002 payment.

23.     On May 9, 2002, after Lisa Bridge had supplied both Aames and Ocwen Bank with the information required to demonstrate the double payment, Lisa Bridge transmitted a Qualified Written Request as provided under RESPA to Ocwen Bank demonstrating once again that both the personal check and at least one of the replacement Firstar official checks were paid and deducted from Plaintiff's Firstar account in April, 2002.

24.     Ocwen Bank later acknowledged receipt only of the official check, but not the personal check.  Ocwen Bank then began a series of computerized automated dialer telephonic collection calls to Plaintiff Lisa Bridge at home; to Plaintiff Lisa Bridge's cellular phone; and, to Plaintiff William Bridge's cellular phone.

25.     On July 1, 2002, Plaintiff Lisa Bridge transmitted a "Do Not Call" letter to Ocwen Bank pursuant to 16 U.S.C. § 1692c(c), instructing it to place Plaintiff on its "Do Not Call" list and again informing Aames and Ocwen Bank of the failure to properly credit Plaintiff with the timely loan payments.

26.     Ocwen Bank continued to treat Lisa Bridge's mortgage as if in default, and responded by threatening Plaintiff Lisa Bridge with foreclosure if Plaintiff Lisa Bridge did

not make an additional monthly payment, despite the fact that Lisa Bridge was not in default on her mortgage, and had timely cured any default.

27.     At the instruction of Ocwen Bank, on July 4, 2002, the law firm of Moss, Collis, Stawiarski, Morris, Schneider and Prior, LLC sent a "collection letter" to Plaintiff Lisa Bridge threatening her with foreclosure, despite the fact that Lisa Bridge was never in default, or had timely cured any default.

28.     In addition, Ocwen Bank has been charging Plaintiff Lisa Bridge a late fee each month since April, 2002, making false representation of the character, amount, or legal status of the alleged debt owed by Plaintiff, Lisa Bridge, threatening to take action that could not legally be taken, including, without limitation, foreclosure, making false representations or implying that Plaintiff Lisa Bridge has acted wrongfully in order to disgrace her, and using false representations or deceptive means to collect or attempt to collect the alleged debt.

29.     From July, 2002 through around October of 2007, Ocwen Bank has called Lisa Bridge at home approximately twice to five time daily, five to seven days per week, each time leaving a recorded message on Plaintiffs' home phone or cell phone voicemail.

30.     From July, 2002 through around October of 2007, Ocwen Bank has called William Bridge on his cellular phone, approximately twice to five times daily, five to seven days per week, each time leaving a recorded message on his cellular phone or cellular phone voicemail, despite Plaintiff William Bridge never owing any monies to Ocwen.

31.     From July, 2002 through the date of filing this Third Amended Complaint, Ocwen Bank and/or Deutsche have falsely reported to all three major credit reporting services, derogatory information concerning Plaintiff Lisa Bridge's credit worthiness and alleged lack of timely payments, in violation of law.

32.     From July, 2002 through the date of filing this Third Amended Complaint, Ocwen has charged Plaintiff Lisa Bridge numerous excessive and unjustified "late charges" of at least $376.98 each month, as well as "interest" on said late fees, in violation of law.

33.     The statements made by Ocwen Bank are to be interpreted under the least sophisticated debtor test.  *Smith v. Computer Credit, Inc.*, 167 F. 3d 1052, 1054 (6th Cir. 1999); *Smith v. Transworld Systems, Inc.*, 953 F. 2d 1025, 1029 (6th Cir. 1992).

34.     At all relevant times, Ocwen Bank, jointly and severally with Deutsche, have been in exclusive care, custody and control of the records and data associated with the orders to have both Plaintiffs called; in exclusive care, custody and control of all data records of the multitude of illegal computer generated auto-dialed collection calls, as well as all records and data regarding the number of calls, the time the calls were illegally auto-dialed by the computer, and the phone numbers to which the multitude of illegal phone calls were made.

## COUNT I
### (Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692(e))

35.     Plaintiffs incorporate by reference all of the allegations set forth above, and further allege as follows:

36.     Federal law prohibits the use of "any false, deceptive or misleading representation or means in connection with the collection of any debt …' including the

'false representation of … the character, amount or legal status of any debt … and the 'threat to take any action that cannot legally be taken' …".  (See: 15 U.S.C. § 1962(e)).

37.     Without limiting the numerous and repeated violations of the FDCPA, Ocwen Bank violated the FDCPA in the non-exclusive following ways:

(a).     Ocwen Bank violated the FDCPA by the use of false, deceptive, or misleading representations or means in connection with the collection of the debt allegedly owed by Plaintiff Lisa Bridge.  Such conduct constitutes a false representation of the character, amount, or legal status of any debt, pursuant to 15 U.S.C. § 1692e(2)(A).

(b).     The conduct of Ocwen Bank further constitutes a threat to take action that cannot legally be taken or that is not intended to be taken, pursuant to 15 U.S.C. § 1692e(5).

(c).     The conduct of Ocwen Bank further constitutes a false representation or implication that Plaintiff Lisa Bridge committed a crime or other wrongful conduct in order to disgrace her, pursuant to 15 U.S.C. § 1692e(7).

(d).     The conduct of Ocwen Bank further constitutes the use of a false representation or deceptive means to collect or attempt to collect any debt or to obtain information as to its source, authorization, or approval, pursuant to 16 U.S.C. § 1692e(9); concerning a consumer, pursuant to 15 U.S.C. § 1692e(10).

(e).     The conduct of Ocwen Bank to cause both Plaintiffs' telephones to continuously ring or engaging both Plaintiffs in telephone conversations repeatedly with the intent to annoy, abuse and harass both Plaintiffs is a violation of 15 U.S.C. § 1692d(5), particularly because William Bridge never owed any money to Aames,

- 10 -

Ocwen, or Deutsche and because it is questionable as to whether Lisa Bridge owes Ocwen Bank or Deutsche any money, as any interest allegedly held by Ocwen or by Deutsche in Lisa Bridge's property located at 9099 Fairmont Road is not of record with the Geauga County Recorder.

(f).    As Plaintiff Lisa Bridge requested that Ocwen Bank cease communications with her, Ocwen Bank's continuous telephone calls to both Plaintiffs are a violation of 15 U.S.C. § 1692c(c).

(g).    The foregoing violations of § 1692 of the FDCPA renders Ocwen Bank liable for statutory damages, costs, and reasonable attorney fees pursuant to § 1692k of the FDCPA.

38.    Ocwen Bank and Deutsche Bank, jointly and severally, violated the FDCPA in the following non-exclusive ways:

(a).    By making false, deceptive and misleading representations concerning Ocwen Bank's and Deutsche Bank's standing to foreclose on Lisa Bridge's mortgage when neither Ocwen Bank nor Deutsche Bank are in the chain of title at the Geauga County Recorder's Office, and neither Ocwen Bank nor Deutsche are holders or holders in due course, of Lisa Bridge's December 7, 2001 Promissory Note made to Aames.  Accordingly, both Ocwen and Deutsche are attempting to collect a debt owed to a third-party.

(b).    Falsely represented the status of Lisa Bridge's debt, in particular that it was in default when in fact it was not.

(c).    Falsely represented or implied that the debt was owing to Ocwen Bank or Deutsche Bank as a holder in due course or an innocent purchase for value or

an assignee or a transferee, when in fact no assignment, sale or transfer had ever been accomplished, perfected, completed or recorded with the Geauga County Recorder's Office, or according to Ohio law.

(d).    Threatened to take action, namely engaging in collection activities and collection and foreclosure suits as a Trustee, that cannot legally be taken by Ocwen Bank or Deutsche Bank, as upon information and belief, neither Ocwen nor Deutsche Bank were in compliance with Ohio law regarding their wide variety of activities, including Deutsche acting as a Trustee in Ohio, as upon information and belief, Deutsche Bank has not properly complied with R.C. §§ 1111.03(B) or 1111.04(A); and, Deutsche Bank has not pledged qualified securities of $100,000.00 to the Treasurer of Ohio as required by R.C. § 1111.03.  Additionally, upon information and belief, neither Ocwen nor Deutsche have registered with the Ohio Secretary of State to transact business within the State of Ohio.

(e).    The foregoing violations of Section 1692 of the FDCPA  renders Ocwen Bank and Deutsche Bank liable, jointly and severally, for statutory damages, costs, and reasonable attorney fees pursuant to Section 1692(k) of the FDCPA.

39.    As a direct and proximate result of Ocwen Bank's and Deutsche Bank's joint and several violations of Section 1962 of the FDCPA, Ocwen Bank and Deutsche Bank are jointly and severally liable for statutory damages, costs and reasonable attorney fees to each Plaintiff, pursuant to Section 1692(k) of the FDCPA.

### COUNT II
**(Telephone Consumer Protection Act, 47 U.S.C. § 227)**

40.    Plaintiffs incorporate by reference all of the allegations set forth above, and further allege as follows:

41.     Ocwen Bank violated the TCPA, 47 U.S.C. 227, as amended, through the use of an autodialer telephone, computer or other device to send unsolicited messages to both Plaintiffs, on Plaintiffs' land phone lines, and on Plaintiffs' cellular telephones.

42.     The actions of Ocwen Bank as alleged herein were willful and ongoing, and continued after Lisa Bridge specifically demanded in writing to be placed on Ocwen Bank's "Do Not Call" list, in violation of 47 CFR § 64.1200(d)(3).

43.     Ocwen Bank either failed to maintain in a "Do Not Call" list and/or negligently trained its personnel in maintaining and complying with a "Do Not Call" list and continued calling Plaintiff Lisa Bridge after she specifically demanded in writing to be placed on Ocwen Bank's "Do Not Call" list in violation of 47 CFR § 64.1200(d)(6); (6).

44.     Ocwen Bank further violated the TCPA by failing to identify in the pre-recorded computerized phone messages the name of the individual caller, failing to identify the name of the entity on whose behalf the call was being made, and failing to provide a telephone number or address at which the caller or the entity could be contacted, in violation of 47 CFR 64.1200(d)(4).

45.     Ocwen Bank has further violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii) with respect to both Plaintiffs, which makes it unlawful for any person within the United States to make any call using any automatic dialing telephone system to any telephone number assigned to a cellular telephone service, other than a call made for emergency purposes or made with the prior express consent of the called party.

- 13 -

46.     The actions of Ocwen Bank as alleged herein to continuously make calls using an automatic dialing telephone system to a cellular telephone are willful and wanton.

47.     Ocwen Bank is liable to both Plaintiffs for a $500.00 statutory penalty for each violation of the TCPA together with treble damages owing to the willful nature of Ocwen Bank's actions pursuant to 15 U.S.C. § 227(b)(3)(B).     Additionally, each separate, illegal computer generated auto-dialer call arises to numerous TCPA violations.  [See: *Charvat v. NMP, LLC*, 656 F. 3d 440 (6th Cir. 2011)].

48.     As a direct and proximate result of Ocwen Bank's violations of the TCPA, Ocwen Bank is liable to both Plaintiffs for a $500.00 statutory penalty for each violation of the TCPA together with treble damages owing to the willful nature of Ocwen Bank's actions pursuant to 15 U.S.C. § 227(b)(3)(B).

## COUNT III
**(Ohio Consumer Sales Practices Act)**

49.     Plaintiffs incorporate by reference all of the allegations set forth above, and further allege as follows:

50.     Ocwen Bank and Deutsche Bank are "suppliers" within the meaning of Chapter 1345, *et seq.* of the Ohio Revised Code and R.C. § 1345.01(C), specifically.

51.     The Plaintiffs, Lisa Bridge and William Bridge are "consumers" within the meaning of Chapter 1345, *et seq*. of the Ohio Revised Code and R.C. § 1345.01(D), specifically.

52.     Ohio's Consumer Sales Practices Act prohibits unfair or deceptive Consumer Sales Practices (R.C. § 1345.02) and prohibits unconscionable acts or practices concerning residential mortgages (R.C. § 1345.031).

53.     Ocwen Bank violated the Ohio Consumer Sales Practices Act in the following non-exclusive ways:

(a).     By the use of false, deceptive or misleading representations or means in connection with the collection of Lisa Bridge's mortgage debt.

(b).     By threatening to take action that Ocwen Bank cannot legally take or that is not really intended to take.

(c).     By using false representations or deceptive means to collect or attempt to collect any debt, particularly against William Bridge, who never owed any debt to Ocwen Bank, to Aames or to Deutsche Bank.

(d).     By causing both Plaintiffs' telephones to continuously ring or engage both Plaintiffs in telephone conversations repeatedly with the intent to annoy, abuse or harass both Plaintiffs.

(e).     By continuing to attempt to communicate with Lisa Bridge by cell phone and landline after Lisa Bridge sent out a "Do Not Call" demand.

(f).     By falsely representing the status of Lisa Bridge's debt, in particular that Lisa Bridge was in default, when in fact she was not.

(g).     By falsely representing or implying that the debt was owing to Ocwen Bank as a holder in due course or an innocent purchaser for value or an assignee or transferee when in fact no assignment, sale or transfer has ever been accomplished, perfected, completed or recorded with the Geauga County Recorder's Office, or according to Ohio law.

(h).    By contacting William Bridge on his cell phone repeatedly, with purpose to annoy and harass, on the pretext of collecting the debt in default, when William Bridge never owed a debt, and when there was no default.

(i)    by transacting business in the State of Ohio without legally registering with the Ohio Secretary of State.

54.    Deutsche Bank violated the Ohio Consumer Sales Practice Act in the following non-exclusive ways:

(a).    By falsely representing or implying that a debt was owing to Deutsche Bank as a holder in due course or an innocent purchaser for value or an assignee or transferee when in fact no assignment, sale or transfer was ever accomplished, perfected, completed or recorded with the Geauga County Recorder's Office, or according to Ohio law.

(b).    By falsely representing the status of Lisa Bridge's debt, in particular that it was in default when in fact it was not.

(c).    By falsely representing or implying that a debt was owed to Deutsche Bank as a holder in due course or an innocent purchaser for value or an assignee or a transferee, when in fact no assignment, sale or transfer had been accomplished, perfected or recorded with the Geauga County Recorder's Office, or in accordance with Ohio law.

(d).    By threatening to take action, namely engaging in collection activities and collection and foreclosure suits as a Trustee, that cannot legally be taken by Deutsche Bank, as Deutsche Bank is not in compliance with Ohio law regarding its wide variety of activities as a Trustee in Ohio, as upon information and belief, Deutsche

Bank has not properly complied with R.C. §§ 1111.03(B) or 1111.04(A), and Deutsche Bank has transacted business in the State of Ohio without legally registering with the Ohio Secretary of State.

55.    As a direct and proximate result of Ocwen Bank's and Deutsche Bank's unfair, deceptive and unconscionable trade practices, each Plaintiff has suffered monetary damages in an amount which exceeds $75,000.00, exclusive of interest and costs, the exact amount to be proven at the trial of this litigation.

56.    As a further direct and proximate result of Ocwen Bank's and Deutsche Bank's unfair, deceptive and unconscionable trade practices, each Plaintiff is entitled to three (3) times the amount of his or her actual damages.

57.    As a further direct and proximate result of Ocwen Bank's and Deutsche Bank's unfair, deceptive and unconscionable trade practices, each Plaintiff is further entitled to a statutory award of his or her attorney fees, pursuant to R.C. § 1345.09(F)(2).

## COUNT IV
### (Slander of Lisa Bridge's Credit)

58.    Plaintiffs incorporate by reference all of the allegations set forth above, and further allege as follows:

59.    At various times, the exact times being currently unknown to Lisa Bridge, Ocwen Bank and/or Deutsche Bank published false, defamatory and libelous report(s) specific to Lisa Bridge's credit, with Experian, Equifax and other credit reporting bureaus presently unknown to Lisa Bridge.

60.    The false, defamatory and libelous publication(s) specific to Lisa Bridge's credit, made by Ocwen Bank and/or Deutsche Bank to Experian, Equifax and other

credit reporting bureaus presently unknown to Lisa Bridge, falsely reported that Lisa Bridge was delinquent in her mortgage obligations, when she was not; and/or falsely reported that Lisa Bridge was in default on her mortgage obligations for amounts well in excess of any default with which Lisa Bridge may have been under, said default being expressly denied by Lisa Bridge.

61.     The Defendants Ocwen Bank and/or Deutsche Bank knew, or in the exercise of reasonable care should have known that the false publication regarding Lisa Bridge's credit would injure Lisa Bridge's reputation and adversely affect Lisa Bridge's ability to obtain credit opportunities in the future.

62.     The false publication(s) regarding Lisa Bridge's credit was made with a reckless disregard for the truth and/or with malice and/or with a willful intent to injure Lisa Bridge.

63.     As a direct and proximate result of the Defendants Ocwen Bank's and/or Deutsche Bank's libelous, defamatory and false publications regarding Lisa Bridge's credit, Lisa Bridge has suffered damages, in an amount to be proven at the trial of this matter.

64.     Because Ocwen Bank and/or Deutsche Bank made the false publications of Lisa Bridge's credit with a reckless disregard for the truth, and with express knowledge of its falsity and/or with malice, Lisa Bridge is entitled to punitive damages at the highest rate allowed by Ohio law.

## COUNT V
### (Spoliation of Evidence)

65.     Plaintiffs incorporate by reference all of the allegations set forth above, and further allege as follows:

66.    At all relevant times, the Defendants Ocwen Bank and Deutsche Bank, jointly and severally, were in the exclusive care, custody, and control of all of the data, documents and other evidence and information regarding the number, the frequency, date(s), and telephone numbers that Ocwen Bank caused its computer generated automated telephone dialers to call.

67.    Also at all relevant times, Ocwen Bank and Deutsche Bank, jointly and severally knew, or should have known that litigation with Lisa Bridge and William Bridge was probable, specific to the illegal and unlawful computer generated automated telephone calls dispatched upon Plaintiffs' landline and Plaintiffs' cell phones, particularly because William Bridge never owed Ocwen Bank or Deutsche Bank any money.

68.    Ocwen Bank and Deutsche Bank, jointly and severally, failed to take reasonable steps to protect the integrity of the data, documents and other evidence and information regarding the number, the frequency, date(s), and telephone numbers that Ocwen Bank or Deutsche Bank caused its computer generated automated telephone dialers to call, which has resulted in an intentional and willful destruction of evidence material to Plaintiffs' claims.

69.    Upon information and belief, said willful destruction of the data, documents and other evidence and information regarding the number, the frequency, date(s), and telephone numbers that Ocwen Bank or Deutsche Bank caused its computer generated automated telephone dialers to call was designed to disrupt Plaintiffs' case and/or was designed to disrupt Plaintiffs' ability to prosecute the claims set forth in this Third Amended Complaint.

70.     As a direct and proximate result of Ocwen Bank's and/or Deutsche Bank's willful destruction and spoliation of evidence, each Plaintiff has suffered damages, equal to those damages that Plaintiffs will seek to prove specific to the various claims set forth in this Third Amended Complaint in general, and specific to Plaintiffs' TCPA claims, in particular.

71.     Because Ocwen Bank's destruction and spoliation of evidence material and crucial to Plaintiffs' claims set forth in this Third Amended Complaint in general, and Plaintiffs' TCPA claims in particular, was done intentionally, maliciously and/or with a reckless disregard for the rights of the Plaintiffs, each Plaintiff is entitled to punitive damages at the highest rate allowed by law.

## COUNT VI
### (Loss of Consortium)

72.     Plaintiffs incorporate by reference all of the allegations set forth above, and further allege as follows:

73.     At all relevant times, Plaintiff Lisa Bridge and Plaintiff William Bridge were lawfully married and cohabitating as husband and wife.

74.     As a direct and proximate result of the numerous violations of state and federal law as set forth as independent causes of action in this Third Amended Complaint, the Plaintiff William Bridge has lost and will continue to be deprived of the consortium, care and services of his wife, all to his damage in an amount that would be proven at the trial of this litigation.

75.     As a direct and proximate result of the numerous violations of state and federal law as set forth as independent causes of action in this Third Amended Complaint, the Plaintiff Lisa Bridge has lost and will continue to be deprived of the

consortium, care and services of her husband, all to her damage in an amount that would be proven at the trial of this litigation.

## COUNT VII
### (Declaratory Judgment)

76.    This Court has jurisdiction pursuant to 28 U.S.C. § 2201, providing for jurisdiction by any Court of the United States to declare the rights and other legal relations of any interested party seeking such declaration, and 28 U.S.C. § 2202 provides for the grant of further necessary or proper relief based upon a declaratory judgment against any adverse party whose rights have been determined by such judgment.

77.    Pursuant to this Court's Sixth Amended General Order No. 2006-16 (attached as Exhibit "1"), Deutsche Bank was required to attach to its Counterclaim (Doc. 100) documentation demonstrating that it was the owner and holder of the Note and Mortgage upon which the Counterclaim (Doc. 100) was based. Pursuant to Section 1.2.5 of the General Order, an affidavit alone, such as Exhibit "E" attached to Deutsche Bank's Counterclaim (Doc. 100) is insufficient to comply with Section 1.2.5's "documentation" requirement.    Additionally, Exhibit "E" to Deutsche Bank's Counterclaim (Doc. 100) violates Judge Boyko's October 31, 2007 Opinion and Order in *In Re Foreclosure Cases*, Case No. 1:07-CV-2282, *et al.*, a copy of which is attached hereto as Exhibit "2".

78.    At all times relevant hereto, Deutsche Bank claims to be the current owner and holder of Lisa Bridge's Note and Mortgage originally entered into with Aames, on or about December 7, 2001.    Deutsche claims to possess a valid and subsisting first mortgage upon the Plaintiffs' Property.

79.     Contrary to Deutsche Bank's claims, and contrary to the conclusory statements in the Affidavit of Gina Johnson attached to the Counterclaim (Doc. 100) as Exhibit "E", in which Ms. Johnson simply attests that Deutsche Bank is the "holder" of the Note, Deutsche Bank does not have any legal status as a "holder" or "holder in due course" of the December 7, 2001 Note executed by Plaintiff Lisa Bridge and made payable to the order of Aames. The Note, attached hereto as Exhibit "3", on its face reflects that Aames remains the "holder" and "payee" of the Note, continuously from the date of execution and delivery to Aames on December 7, 2001, up to and including the date of the commencement of the Counterclaim on June 24, 2009.  Alternatively, the Note attached hereto as Exhibit "4" is bearer paper, which Deutsche Bank is not the holder of, and provides Deutsche Bank no legal standing to foreclose the December 7, 2001 Mortgages on Lisa Bridge's residence.

80.     Deutsche Bank's assertion that the Corporation Assignment of Mortgage attached hereto as Exhibit "5", constitutes a proper negotiation of the Note, conferring "holder" or "holder in due course" status to Deutsche Bank, is clearly erroneous as a matter of law.

81.     Deutsche bank, in its Counterclaim at Doc. 100, alleges that it is Trustee for "Aames Mortgage Trust 2002-1 Mortgage Pass-Through Certificates, Series 2002-1", and is therefore the current holder of the Note or Notes attached hereto as Exhibits "3" and/or "4", and the Mortgage.  (Doc. 100, ¶ 17).  The assignment of the Mortgage (Ex. "5"), has nothing whatsoever to do with the proper negotiation and endorsement of the Note or Notes attached hereto as Exhibits "3" and/or "4".  In order for Lisa Bridge's December 7, 2001 Note made to Aames to be held by the Trust alleged by Deutsche,

the "Pooling and Servicing Agreement" (relevant pages of which are attached hereto as Exhibit "6") require, at Section 2.01(a) and p. 31, as follows:

> "(a)    The original Mortgage Note, with all intervening endorsements sufficient to show a complete chain of endorsement to the Person endorsing the Mortgage Note to the Trustee, endorsed (which endorsement may be by manual facsimile signature) by the Person so endorsing without recourse to the order of the Trustee in the following form: "Pay to the order of Bankers Trust Company of California, N.A., in trust for the benefit of holders of Aames Mortgage Trust 2002-1 Mortgage Pass-Through Certificates, Series 2002-1, without recourse";".

82.    The Notes attached hereto as Exhibits "3" and "4" do not show "all intervening endorsements sufficient to show a complete chain of endorsements to" Deutsche Bank, which again, is not the "holder" or "holder in due course" of either Note attached hereto as Exhibits "3" and "4".

83.    Pursuant to R.C. § 1303.32(A) (U.C.C. 3-302), the following criteria must be satisfied to establish "holder in due course" status: "(1) The instrument when issued or negotiated to the holder does not bear evidence of forgery or alteration that is so apparent, or is not otherwise so irregular or incomplete as to call into question its authenticity;" and, "(2) The holder took the instrument under all of the following circumstances: (a) For value; (b) In good faith; (c) Without notice that the instrument is overdue or that there is an uncured default with respect to payment of another instrument issued as part of the same series; (d) Without notice that the instrument contains an unauthorized signature or has been altered; (e) Without notice of any claim to the instrument as described in section 1303.60 of the Revised Code; (f) Without notice that any party has a defense or claim in recoupment described in division (A) of

- 23 -

section 1303.35 of the Revised Code."  Neither Note attached hereto as Exhibits "3" or "4", met this statutory definition and requirement.

84.     Deutsche Bank cannot assert being a "holder" of the Note, let alone claiming "holder in due course" status, due to a clear and unambiguous failure of the proper negotiation and delivery of the Note pursuant to R.C. § 1301.01(T)(1) (U.C.C. 1-201), which defines a "holder" with respect to a negotiable instrument as either of the following:  "(a) if the instrument is made payable to the bearer, a person who is in possession of the instrument", or, "(b) if the instrument is payable to an identified person, the identified person when in possession of the instrument".  Neither Note attached hereto as Exhibits "3" or "4", met this statutory definition and requirement.

85.     The requirements for negotiation are governed by R.C. § 1303.21 (U.C.C. 3-201), which provides in relevant part: "(A) "Negotiation" means a voluntary or involuntary transfer of possession of an instrument by a person other than the issuer to a person who by the transfer becomes the holder of the instrument.", and "(B) Except for negotiation by a remitter, if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder...".

86.     The Notes attached as Exhibits "3" and "4" were never delivered, negotiated and/or indorsed by Aames to Deutsche Bank's "Order" as required by R.C. § 1303.01(A)(8) (U.C.C. 3-103), in such form sufficient to make Deutsche Bank a holder under Ohio law, nor has there been compliance with the "Pooling and Servicing Agreement" attached hereto as Exhibit "6", requiring "all intervening endorsements sufficient to show a complete chain of endorsements" to Deutsche Bank.

- 24 -

87.     Pursuant to R.C. §1303.24(A)(1) (U.C.C. 3-204) an Indorsement "…means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for any of the following purposes:  (a) To negotiate the instrument…".  The Notes attached hereto as Exhibits "3" and "4" were never negotiated or indorsed to Deutsche Bank's order by Aames, which remains the holder of the Note up to the present time.

88.     The failure by Aames to negotiate and indorse the Note, and to comply with the "Pooling and Servicing Agreement" as alleged in ¶¶ 81, 82 and 86, does not confer "holder" or "holder in due course" status on Deutsche Bank, depriving Deutsche Bank of any right, title or interest in the Note, any payment thereto or proceeds thereof; and, therefore retains in Aames as the payee, all legal interest therein.

89.     Accordingly, Deutsche Bank lacks standing and capacity to assert any foreclosure claim against Plaintiffs, and Deutsche Bank is not the real party in interest for the foreclosure of Plaintiffs' residence.  Deutsche Bank also has no legal right to collect payment under either note attached hereto as Exhibits "3" and "4".

90.     Further, the assignment of the Mortgage, without proper negotiation and endorsement of the Note, creates no right in Deutsche Bank to a lien or security interest in the Property, which under the particular facts of this case has severed or split the debt represented by the Note from the collateral secured by the Mortgage, rendering the Note an unsecured obligation, and the Mortgage allegedly held by Deutsche Bank, without constituting security for a valid debt.

91.     Plaintiffs are therefore entitled to a declaratory judgment that Deutsche Bank is not the "holder" or "holder in due course" of the either Note attached as Exhibits

"3" and "4" and that Deutsche Bank's claim to acceleration, payment and collection of the Note is unenforceable.

92.     Plaintiffs are further entitled to a declaratory judgment that Deutsche Bank is the assignee only of the Mortgage on the Property, and is not a "holder" or "holder in due course" of the Note, and that Deutsche Bank does not have standing to foreclose the Mortgage on Plaintiffs' property by virtue of the severance and separation of the Note from the Mortgage, and that such action is *ultra vires*, and wholly without authority, right or justification, and that Plaintiffs are entitled to a declaration from this Honorable Court that Deutsche Bank lacks legal standing to foreclose on the mortgages on Plaintiffs' residence.

93.     Plaintiffs are also entitled to a declaration that Deutsche Bank lacks standing and capacity to foreclose on the mortgage on Plaintiffs' residence and that Deutsche Bank is not the real party in interest for the previously asserted Counterclaimant (Doc. 100), and that Deutsche Bank, having not registered with the Ohio Secretary of State to transact business within the State of Ohio, lacks standing to bring any claim in any court within the State of Ohio, including this Honorable United States District Court for the Northern District of Ohio.

94.     Plaintiffs are entitled to a declaratory judgment that Aames has not complied with the "Pooling and Servicing Agreement" attached as Exhibit "6", in that "all intervening endorsements" sufficient to show a complete chain of endorsement to" Deutsche Bank are non-existent, further entitling Plaintiffs to a declaratory judgment that Deutsche bank is not the Trustee of Lisa Bridges' December 7, 2001 Note made to

Aames, and that Deutsche Bank has no legal rights to payment of the Notes attached hereto as Exhibits "3" and "4".

## COUNT VIII
## UCC 3-418 (R.C. § 1303.58)

95.     Plaintiff incorporates by reference all of the allegations set forth above, and further allege as follows:

96.     At no time has Deutsche Bank been a "holder", a "holder in due course" or a "payee" of either of the Notes attached hereto as Exhibits "3" and "4".

97.     Ocwen Bank and Deutsche Bank, jointly and severally, concealed material facts from Lisa Bridge, regarding her residential mortgage and accompanying Note, that Plaintiffs could not reasonably have been expected to discover on their own, if not for this instant complex litigation, and Plaintiffs' subsequent discovery of the material facts concealed by Ocwen Bank and Deutsche Bank, as more fully alleged in this Third Amended Complaint in general, and in Count VII for Declaratory Judgment, in particular.

98.     As a direct and proximate result of Defendant Ocwen Bank and Deutsche Bank's concealment of material facts, Plaintiffs paid Lisa Bridge's December 7, 2001 Note made to Aames, to either Ocwen Bank and/or Deutsche Bank, by mistake.

99.     Pursuant to R.C. § 1303.58(B), Plaintiffs are entitled to recover any and all payments made to either Ocwen Bank and/or Deutsche Bank, under Lisa Bridge's December 7, 2001 Note, originally made to Aames.

## COUNT IX
## Civil Conspiracy

100.    Plaintiff incorporates by reference all of the allegations set forth above, and further allege as follows:

101.   The Defendants Ocwen Bank and Deutsche Bank have maliciously combined and conspired with, and have collectively planned and cooperated with each other, to conceal material facts from Plaintiffs, who are to be treated as least sophisticated consumer under Ohio and federal law, regarding the true status of the "holder" and "holder in due course" of Lisa Bridge's December 7, 2001 Note originally made to Aames.

102.   As part of this malicious combination and conspiracy, the Defendants Ocwen Bank and Deutsche Bank collectively planned, cooperated and agreed to engage in a designed course of violations, of Ohio and federal law, more particularly set forth in this Third Amended Complaint, specifically including a planned, malicious civil conspiracy to violate the FDCPA, the TCPA and the OCSPA.

103.   Part of this complex civil conspiracy between Defendants Ocwen Bank and Deutsche Bank was to trick and defraud Plaintiffs in paying Lisa Bridge's December 7, 2001 Note originally made to Aames, to Ocwen Bank and/or to Deutsche Bank, when these Defendants had actual knowledge that neither Ocwen Bank nor Deutsche Bank were legally entitled to receive any payments under Lisa Bridge's December 7, 2001 Note originally made to Aames.

104.   This malicious civil conspiracy between Ocwen Bank and Deutsche Bank required cooperation and combination of both Ocwen Bank and Deutsche Bank, and was designed and created with express knowledge of the concealment of material facts as alleged above, and with express knowledge and intent to violate the FDCPA, the TCPA and the OCSPA, as is more particularly alleged in this Third Amended Complaint.

105.     As a direct and proximate result of this Civil Conspiracy, Plaintiffs have suffered enormous economic and non-economic damage, which equals and surpasses Plaintiffs' damages that have been suffered as a direct and proximate result of Ocwen Bank's and Deutsche Bank's joint and several violations of the FDCPA, the TCPA and the OCSPA, as is more fully alleged in this Third Amended Complaint.

106.     Because the malicious conspiracy alleged herein was done with malice, and without legal cause and justification, Plaintiffs are entitled to punitive damages against Ocwen Bank and Deutsche Bank, at the highest rate allowed by law.

**WHEREFORE**, Plaintiffs Lisa Bridge and William Bridge demand judgment as follows:

1.     On Count I, Lisa Bridge and William Bridge each demand judgment for statutory damages, costs and reasonable attorney fees;

2.     On Count II, Lisa Bridge and William Bridge each demand judgment for statutory damages, trebled according to law, costs and reasonable attorney fees;

3.     On Count III, Lisa Bridge and William Bridge each demand statutory damages, trebled pursuant to R.C. § 1345.09(B) and attorney fees pursuant to R.C. § 1345.09(F)(2);

4.     On Count IV Lisa Bridge demands judgment in an amount which exceeds $25,000.00, the exact amount to proven at the trial of this lawsuit;

5.     On Count V, Lisa Bridge and William Bridge each demand judgment in an amount which exceeds $25,000.00, the exact amount to be proven at the trial of this lawsuit;

6.      On Count VI, Lisa Bridge and William Bridge each demand judgment in an amount which exceeds $25,000.00, the exact amount to be proven at the trial of this lawsuit;

7.      On Count VII Plaintiffs respectfully request this Honorable Court to enter a declaratory judgment in favor of Plaintiffs and against Deutsche Bank that Deutsche Bank:

(a)      is not a holder or a holder in due course of the Note executed by Plaintiff Lisa Bridge on December 7, 2001, as that term is defined and interpreted under applicable Ohio law;

(b)      is not in possession of the Note, which has not been delivered, negotiated or indorsed to Deutsche Bank;

(c)      is only the bare assignee of the Open-End Mortgage filed of record on July 14, 2003, without any interest in the Note, and has no rights to enforce the collection or payment of the Note by foreclosure or otherwise;

(d)      has no continuing right to a lien or security interest in the Property by virtue of the severance of the Note from the Mortgage, for which the Mortgage is no longer a valid and subsisting lien on the Property;

(e)      lacks standing and capacity to seek foreclosure, and is not the real party in interest for the Counterclaimant previously asserted at Doc. 100, and having failed to register with the Ohio Secretary of State, can not maintain any claim in any court of the State of Ohio, including the Honorable United States District Court for the Northern District of Ohio.

(f)     entering a declaratory judgment in favor of Plaintiffs and against Deutsche Bank that the Mortgage filed of record on July 14, 2003 is not a valid and subsisting mortgage upon the Property, and is void and unenforceable;

(g)     entering a declaratory judgment in favor of Plaintiffs and against Deutsche Bank and quieting title to the Property in the name of Plaintiff Lisa Bridge; and, ordering Deutsche Bank to cancel  and release the Mortgage of record within ten days of the entry of a final judgment herein;

(h)     entering a declaratory judgment in favor of Plaintiffs, that Deutsche Bank is not the "Trustee" for Lisa Bridge's December 7, 2001 Note originally made to Aames, because of the failures to comply with the "Pooling and Servicing Agreement" attached hereto as Exhibit "6";

(i)     entering a declaratory judgment in favor of Plaintiffs that the Notes attached hereto as Exhibits "3" and "4" do not show "all intervening endorsements sufficient to show a complete chain of endorsements to" Deutsche Bank; and,

(j)     entering such other preliminary and permanent relief as is necessary and appropriate to prohibit Deutsche Bank, and all others acting in concert with it, from any attempts to enforce liability under the Note and Mortgage against Plaintiffs.

8.     On Count VIII, Lisa Bridge and William Bridge each demand judgment, pursuant to R.C. § 1303.58(B), that all payments made under Lisa Bridge's December 7, 2001 Note originally made to Aames, ultimately paid to Ocwen Bank and/or to Deutsche Bank, be disgorged, and returned to Plaintiffs;

9.    On Count IX, Lisa Bridge and William Bridge each demand judgment in an amount which meets or exceeds Plaintiffs' statutory damages arising under Counts I, II, and III of this Third Amended Complaint, the exact amount to be proven in this lawsuit, against Ocwen Bank and Deutsche Bank, jointly and severally, plus punitive damages at the highest rate allowed by law.

10.    Each Plaintiff demands pre and post-judgment interest at the highest rate allowed by law; costs and expenses including attorney fees; punitive damages at the highest rate allowed by law; and, such other relief as this Honorable Court may deem just and appropriate.

## JURY DEMAND

Each Plaintiff demands a trial by jury composed of the maximum number of jurors allowed by law on all issues so triable.

Respectfully submitted,


_____/s/ Mitchell J. Yelsky_____            _____/s/ James R. Douglass_____
**YELSKY & LONARDO**                            **JAMES R. DOUGLASS CO., LPA**
**BY: MITCHELL J. YELSKY**                      **BY: JAMES R. DOUGLASS**
Ohio Reg. No. 0039295                           Ohio Reg. No. 0022085
75 Public Square, Suite 800                     20521 Chagrin Boulevard, Suite 200
Cleveland, Ohio 44113                           Shaker Heights, Ohio 44122
(216) 781-2550 - Telephone                      (216) 991-7640 – Telephone
(216) 781-6688 - Facsimile                      (216) 991-7641 – Facsimile
MJY@yelskylonardo.com - Email                   firedcoach@aol.com – Email

Counsel for **PLAINTIFFS**                      Co-Counsel for **PLAINTIFFS**
**LISA BRIDGE and WILLIAM BRIDGE**              **LISA BRIDGE and WILLIAM BRIDGE**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was filed electronically, on the 31st day of May, 2012.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.



                                             /s/ Mitchell J. Yelsky

                                         **MITCHELL J. YELSKY**