DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LISA BRIDGE, et. al., | ) | |
| | ) | CASE NO. 1:07-CV-02739 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER RE MOTION TO DISMISS |
| OCWEN FEDERAL BANK FSB, et. al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Before the Court is Defendants' motion to dismiss Counts II, III, IV, V, VI, VII, VIII and

IX of Plaintiffs' Third Amended Complaint. The Court, having reviewed the parties' filings,

entertained oral argument and invited and reviewed additional briefing, dismisses Counts II, VII

and VIII, with prejudice, and grants partial dismissals as to Counts III, IV, V, VI, and IX.  For

the purposes of clarity, the Court also strikes from the Third Amended Complaint the portions of

the prayer associated with Counts II, VII and VIII.

**FACTUAL BACKGROUND**

The underlying facts of this case are relatively simple. On or about December 7, 2001

Plaintiff Lisa Bridge executed a promissory note in the  approximate  principal amount of

$460,000 to Aames Capital Corporation ("Aames"); the note was secured by a mortgage. (ECF

148 at 754). In April of 2002,  previously-dismissed defendant Firstar Bank ("Firstar")

dishonored the  personal check issued by Plaintiff to pay her April mortgage obligation.  Lisa

Bridge arranged for an official check drawn on Firstar, dated April 8, 2002, as a replacement for

the dishonored check. For unknown reasons, the April 8 check was not paid by Firstar. (ECF 148

(1:07 CV 2739)

at 755, 756). After receiving a notice of default on April 20, 2002, Lisa Bridge arranged for a third check to be made payable to Aames. Plaintiffs allege that two of the three checks were cashed, and therefore Aames received two full monthly mortgage payments for the month of April 2002. (ECF 148 at 756). Aames took the position that only one payment was made.

Meanwhile, on or about April 15, 2002 Aames notified Lisa Bridge that, effective April 30,  the servicing of her loan would be transferred to Defendant Ocwen Federal Bank FSB. (Ocwen Federal Bank FSB was Ocwen Loan Servicing's predecessor-in-interest; the two entitles are jointly referred to as "Ocwen.") Ocwen acknowledged Aames's receipt of only one check for April, 2002.

Also on or about May 1, Plaintiffs' note and mortgage were transferred to Deutsche Bank National Trust Co., f/k/a Bankers Trust Company of California, N.A. as Trustee for Aames Mortgage Trust 2002-1 Mortgage Pass-Through Certificates, Series 200 2002-1-2. Pursuant to a Pooling and Servicing agreement, Ocwen had responsibility to seek foreclosure and to pursue and defend litigation respecting Lisa Bridge's loan.[1]  Ocwen arranged for phone calls to both Plaintiffs regarding the outstanding debt, continued to add late fees, and threatened Plaintiffs with foreclosure. (ECF 148 at 758). The last alleged date of any phone contact was in October, 2007. (ECF 148 at §§ 29, 30).

---

[1]

While Plaintiffs deny the effectiveness of any transfer of ownership to Deutsche–and the validity of the pooling agreement-- it is undisputed that Ocwen acted pursuant to the Pooling and Servicing Agreement in its collection efforts.

2

(1:07 CV 2739)

## PROCEDURAL HISTORY

### A. *Bridges I (Judge Dowd)*

The procedural history of this case is not so simple.

On September 11, 2007 Lisa Bridge filed suit in federal court against Firstar Bank, Aames and Ocwen, alleging misconduct relating to the claimed default on Plaintiffs' mortgage, and the actions of the Defendants in attempting collection of the disputed debt. Plaintiffs ceased making any payments on their mortgage in October of 2007. (1:09-cv-02947, ECF 25 at 166).

During the course of the next 18 months (and multiple changes of counsel), William Bridge was added as a Plaintiff, Deutsche was added as a defendant, Firstar settled and Plaintiffs expanded their theories of recovery. Plaintiffs' Second Amended Complaint, filed in April of 2009, alleged nine counts: violation of the Federal Fair Debt Collection Practices Act ("FDCPA"), the Telphone Consumer Protection Act ("TCPA"), the Telemarketing and Consumer Fraud and Abuse Prevention Act ("TCFAP"), the Real Estate Settlement Procedure Act ("RESPA") and the Ohio Consumer Practice Act, as well as state common law counts of negligence, slander of credit, spoliation of evidence and loss of consortium. (ECF 80).

Deutsche answered Plaintiffs' complaint, and filed a Counterclaim and Third Party Complaint for breach of promissory note and foreclosure. (ECF 100). In response, Plaintiffs answered and filed a Counterclaim for declaratory relief and to quiet title. (ECF 120).

Deutsche and Ocwen also moved to dismiss the Second Amended Complaint. (ECF 99, 98). In a Memorandum Opinion entered August 28, 2009, this Court dismissed with prejudice the federal law counts predicated upon the FDCPA, TCFAP and RESPA. The TCPA count was

3

(1:07 CV 2739)

dismissed without prejudice, on the basis the Court lacked subject matter jurisdiction. The Court dismissed Plaintiffs' pendent state claims without prejudice. The Court also dismissed without prejudice Deutsche's Third Party Complaint and Counterclaim, and Plaintiffs' Counterclaim. (ECF 129).

Plaintiffs appealed this Court's decision to the Sixth Circuit, but only as to the dismissal with prejudice on  the FDCPA count. In their brief to the appellate court, Plaintiffs specifically declared they did not take issue with the district court's dismissals of the TCFAP or RESPA claims, or the Court's determination it lacked subject matter jurisdiction over the TCPA claim. (Case: 09-4220, Doc. 00619663045, at 12).

**B.** ***Bridges II (Judge Oliver)***

In 2009, while the appeal of *Bridges I* was pending, the Bridges refiled in state court the declaratory relief and quiet title actions this Court had dismissed without prejudice. Defendant Deutsche removed the case to federal court, and it was assigned to Chief Judge Solomon Oliver. (Case 09-CV-2947 "*Bridges II*").

In *Bridges II* Plaintiffs sought the following declarations:

1.     That the assignment of the Mortgage Note to Deutsche was not done in conformity with Ohio law, and therefore Aames was and continued to be the "holder";

2.     That Deutsche has no right, title or interest in the Mortgage Note or the payments due thereon;

3.     That the assignment of the trust and pass-through certificates utilized by Aames and Deutsch were insufficient to create, in Deutsche, the legal status of a "holder" or a

4

(1:07 CV 2739)

"holder in due course";

4.      That there was a "clear and unambiguous failure of the proper negotiation and delivery of the Mortgage Note" pursuant to O.R.C. §§ 1303.32 (A), 1301.01 (T) (1),1303.21,1303.01 (A) (8), and 1303.24 (A)(1);

5.      That the assignment of the Mortgage Deed, without  proper negotiation of the Mortgage Note, left Deutsch with no right to a lien or security interest in the property;

6.      That Deutsche does not have standing to seek recourse against the property, and any such threatened action is *ultra vires*.

On the quiet title action, Plaintiffs requested a declaration:

7.       That the assignment of the Mortgage Note and Deed was not filed for 19 months and that Deutsche does not possess a valid and subsisting mortgage on Plaintiffs' property  and therefore the mortgage should be declared void and unenforceable.

(The allegations set forth above as 1-7 may be found in Plaintiff's complaint, *Bridges II,* ECF 1-1).

Deutsche filed a motion to dismiss Plaintiffs' complaint.  Deutsche took the position that the Plaintiffs had no standing to contest the transfer of ownership of the mortgage deed and debt from Aames to Deutsche because the Plaintiffs were not parties to such transfer, and the transfer did not affect their contractual obligations. (*Bridges II* , ECF 5 at 45). By order dated September 29, 2010, Chief Judge Solomon Oliver, Jr. agreed and granted Defendants' motion to dismiss for failure to state a claim upon which relief can be granted. (*Bridges II*, ECF 25 at 159). Noting that, "Courts have routinely found a debtor may not challenge an assignment between an

5

(1:07 CV 2739)

assignor and assignee," Judge Oliver found that there was no dispute between Deutsche and Aames over whether the note and mortgage were properly assigned, and Mrs. Bridge lacked standing to raise the issue. (*Bridges II,* ECF 25, at 164, 165). The court pointed out that Mrs. Bridge's position had not changed: "Plaintiff is still in default on her mortgage and subject to foreclosure." *Id.*

Plaintiffs appealed Judge Oliver's decision to the Sixth Circuit. On April 27, 2012, the Sixth Circuit affirmed the district court's order of dismissal with prejudice. (Case No. 10-4241, Document 006111287475).

### C. *__Bridges III (Judge Dowd)__*

Three days later, the Sixth Circuit issued its opinion reviewing this Court's order in *Bridges I.* Because the Bridges had limited their appeal to the dismissal with prejudice of the FDCPA claim, the appellate court considered "the district court's decision only to the extent it deals with the FDCPA." The court cited *Dixon v. Ashcroft,* 392 F. 3d 212, 217 (6th Cir. 2004), for the proposition that, when an appellant does not challenge a district court's dismissal of a claim, the issues not raised are considered abandoned and not reviewed by the appellate court. The Sixth Circuit reversed only "the district court's judgment on the Bridges' FDCPA claims" and remanded for further proceedings consistent with its opinion. (Case No. 09-4220, Document 006111288584 at 13).

On May 31, 2012 Plaintiffs filed a Third Amended Complaint in Case No. 1:07-CV-02739, *Bridges III.* In addition to asserting the FDCPA claim upheld by the Sixth Circuit, Plaintiffs also asserted the federal TCPA claim, and the state statutory and common law claims

(1:07 CV 2739)

that had been dismissed without prejudice in 2009. (Counts II, III, IV, and VI). Plaintiffs also included, with little modification, the declaratory relief and quiet title claims dismissed without prejudice in *Bridges I* and dismissed with prejudice in *Bridges II*. (ECF 148).

On July 16, 2012 Defendants filed a motionotion to dismiss certain counts of the Plaintiffs' Third Amended Complaint for failure to state a claim. (ECF 156). Plaintiffs opposed the motion (ECF 160) and Defendants filed a reply (ECF 163). [2] The parties were asked to file supplemental briefing regarding Defendants' motion to dismiss. These filings were received by the Court on December 19, 2012 and January 4, 2013. (ECF 170, 171, 173, 174).

<u>STANDARD FOR A MOTION TO DISMISS</u>

In ruling on a Rule 12(b)(6) motion to dismiss, the court construes the complaint in a light most favorable to the plaintiff and accepts all well-pleaded factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir.2008); *Harbin–Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir.2005). The court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009), quoting *Bell Atl. Corp v. Twombly,* 550 U.S .554, 555 (2007). The court may also "disregard allegations contradicted by facts established

---

2.

Plaintiffs' also filed a Motion to Stay Defendants' Motion to Dismiss and Motion for Rule 16 (b) Scheduling Order (ECF 162), which Defendants opposed. (ECF 164). Plaintiffs filed a reply on November 02, 2012. At the oral argument held on November 28, 2012, the Court ruled from the bench denying Plaintiffs' motion for a stay, and setting a schedule for discovery and dispositive motions memorialized in the order dated December 6, 2012 (ECF 168).

(1:07 CV 2739)

by exhibits and attached to the pleading." *Girgis v. Countrywide Home Loan, Inc.,* 733 F. Supp. 2d 835, 843 (N.D. Ohio, 2010) (quoting *HMS Property Mgmt. Group Inc. v. Miller,* 69 F. 3d 537 (Table), 1995 WL 641308 at *3 (6th Cir. 1995)).

 To survive a motion to dismiss, the "complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).  A complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal, supra,* 129 S. Ct. at 1949 (citing *Twombly,* 550 U.S. at 557).  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra,* at 678.

 When evaluating a motion to dismiss, the court's primary focus is on the complaint. The court may, however, without converting the motion into one for summary judgment, consider "matters of public record, orders, items appearing in the records of the case, and exhibits attached to the complaint," as well as any other matters that are otherwise appropriate for the taking of judicial notice. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6thCir. 2001); *New England Health Care Employees Pension Fund v. Ernst & Young, LLP.*, 336 F. 3d 495, 511 (6th Cir. 2003); *Doe v. SexSearch.com*, 551 F.3d 412, 416 (6th Cir. 2008). Of particular importance here, the court may take judicial notice of other court proceedings when considering a motion to dismiss. *Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 576 (6th Cir. 2008); *Buck v*

(1:07 CV 2739)

*Thomas M. Cooley Law School*, 597 F.3d 812, 816 (6th Cir 2010).

## LEGAL ANALYSIS

There are two basic issues here: *res judicata* and statute of limitations. The Court will consider *res judicata* first. The question posed is the preclusive effect of *Bridges II* on Counts VII and VIII of *Bridges III*.

### I. Counts VII and VIII of The Third Amended Complaint are Barred by Res Judicata

**A. *Res Judicata:The Preclusive Effects of Prior Judgments on a Subsequent Suit***

As the Supreme Court explained in *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 77, n.1 (1983), *res judicata* consists of two preclusion concepts:

> "issue preclusion" and "claim preclusion." Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. See Restatement (2nd) of Judgments § 27...Claim preclusion refers to the effect on a judgment in foreclosing litigation of a matter that has never been litigated, because it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar. See *Id.*, Introductory Note before § 24.

When judgment is for the plaintiff in the first action, the general rule of merger states that, "1) The plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment; 2) In an action upon the judgment, the defendant cannot avail himself of defenses he might have interposed, or did interpose, in the first action." Restatement (2nd) of Judgments § 18. When the prior judgment is in favor of the defendant, the general rule of bar applies: "A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim."

9

(1:07 CV 2739)

Restatement (2nd) of Judgments § 19. The definition of a "claim" for these purposes is "all or any part of the transaction, or series of connected transactions, out of which the action arose." *Id.*, at §24.

Calling *res judicata* "[a] fundamental precept of common-law adjudication," *Montana v. U.S.*. 440 U.S. 147, 153 (1979), the Supreme Court has emphasized the doctrine is not "a mere matter of practice or procedure inherited from a more technical time, " but, instead, "a rule of fundamental and substantial justice 'of public policy and of private peace, which should be cordially regarded and enforced by the courts.'" *Hart Steel Company v. Railroad Supply Co.,* 244 U.S. 294, 298 (1917), quoting *Kessler v. Eldred*, 206 U.S. 527 (1907). As the Court stressed in *Federated Department Stores, Inc. v. Mottie*, 452 U.S. 394 (1981): "This Court has long recognized that '[p]ublic policy dictates that there be an end of litigation, that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties.'" *Federated, supra,* at 401, quoting *Baldwin v. Traveling Men's Assn.,* 283 U.S. 522, 525 (1931).

**B. *The Preclusive Effect of Bridges II is Governed by Ohio Law***

In *Semtek International* the Supreme Court considered what law should determine the claim-preclusive effect a federal court should give to a prior federal judgment entered in a diversity action. *Semtek International Inc.v Lockeed Martin Corp.*, 531 U.S. 497, 499 (2001). While holding that "federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity," the Court adopted, as the federally prescribed rule of decision, that the court should apply the law of the state in which the federal diversity court sits. *Semtek,*

10

(1:07 CV 2739)

*supra* at 1028; *Ventas, Inc. v. HCP, Inc*., 647 F.3d 291, 304 n.4 (6th Cir. 2011). Thus, Ohio law

on *res judicata* applies to determine the preclusive effect of the judgment entered in *Bridges II.*

In *Grava v. Parkman Township,* the Supreme Court of Ohio abandoned the position that

*res judicata* requires an identity of causes of action, and adopted the modern "transaction or

occurrence" approach set forth in the Restatement of Judgments (2d): "A valid, final judgment

rendered on the merits bars all subsequent actions based upon any claim arising out of the

transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman*

*Township,*73 Ohio St. 3d 379, Syllabus by the Court (1995). The Ohio Supreme Court also

adopted the Restatement definition of "transaction" as a "common nucleus of operative facts.*"*

*Grava* at 382, quoting Restatement (2d) of Judgments § 24, Comment *b*.

The Ohio doctrine of *res judicata* includes both issue preclusion and claim preclusion.

Under issue preclusion a party is prevented from re-litigating in a second action an issue that was

"actually and necessarily litigated and determined in a prior action that was based on a different

cause of action."*Austin v. Club E.,* 2011 WL 243282 at ¶ 13 (Ohio App. Dist. Jan. 13 2011),

citing *Fort Frye Teachers Assn, OEA/NEA v. State Emp. Relations Bd.,* 81 Ohio St. 2d 392, 395

(1998). Claim preclusion bars all subsequent actions based upon any claim that was, or could

have been, brought in a prior action. *Brown v. City of Dayton,* 89 Ohio St. 3d 245, 248 (2000).

Claim preclusion is applicable to the judgment entered in *Bridges II.*  While neither party

addressed the issue in briefing, Ohio has adopted Section 33 of the Restatement (2d) of

Judgments regarding the *res judicata* effect of declaratory relief actions. *State ex rel. Shemo v.*

*City of Mayfield Heights*, 95 Ohio St. 3d 59, 69 (2002); *Jamestown Village Condo Assn v.*

(1:07 CV 2739)

*Market Media Research Inc*., 96 Ohio App. 3d 678, 685-687 (1994). This section limits the preclusive effect of a declaratory relief judgment to issue preclusion if a plaintiff seeks *solely* declaratory relief in the first action.  The complaint in *Bridges II* is not eligible for this exception, for two reasons: (1) Plaintiffs paired the declaratory relief count with a count to quiet title, and (2) Plaintiffs requested injunctive relief.

Restatement Section 33 is clear: If a party includes an action to adjudicate interests in property, such as an action to quiet title, the declaratory relief exception is inapplicable and full bar and merger (claim preclusion) apply. Restatement (2d) Section 33, Comment *d* (an action to quiet title should be treated as an adversary action with the usual consequences of bar and merger). Federal courts "have consistently held that the declaratory judgment exception applies only if the prior action solely sought declaratory relief." *Lauren Sand & Gravel, Inc. v. Wilson*, 519 F. 3d 156, 164 (4th Cir. 2008).

Plaintiffs' complaint in *Bridges II* also requested the court to, "Enter[] such other preliminary and permanent relief as is necessary and appropriate to prohibit Deutsche and/or Aames, and all others acting in concert with them, from any attempts to enforce liability under the Mortgage Note and Mortgage Deed against Plaintiffs and the Property." This is plainly a request for injunctive relief. If a plaintiff requests injunctive relief, the plaintiff loses the right to invoke the declaratory relief exception, *Id.; Stericycle Inc. v. City of Delavan*, 929 F. Supp. 1162, 1164 (E.D.Wis. 1996); *Cimasi v. City of Fenton*, 838 F. 2d 298 (8th Cir. 1988); *Mandarino v. Pollard,* 718 F. 2d 845, 848 (7th Cir. 1983); *Sebra v.Wentworth*, 990 A 2d 538 (ME 2010).

"So long as the request for declaratory relief is combined or followed with coercive

12

(1:07 CV 2739)

relief, the claim preclusion rules that apply to actions for coercive relief apply with full force." 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* §4446 at 313-314. Here, in their prior action, the Bridges sought both declaratory relief and to quiet title, and included a request for injunctive relief. Accordingly, traditional claim preclusion applies to the decision in *Bridges II.*

### C. *All Declarations Sought in Count VII Are Barred By the Decision in Bridges II*

To establish claim preclusion in Ohio, there must be (1) a final judgment by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or could have been litigated in the prior action, and 4) an identity of the causes of action, that is the causes of action arise from the "same transaction, or series of transactions." *Hekfrich v. Metal Container Corporation*, 11 Fed. Appx 574, 576 (6th Cir. 2001).

These matters are readily established here: The District Court of the Northern District of Ohio rendered a final judgment dismissing *Bridges II* with prejudice.   The subsequent action is between the same parties. As will be demonstrated below, almost all of the declarations sought in *Bridges III* were already considered and rejected in *Bridges II*; the few that are new could have been brought in the prior action.

With the exception of two paragraphs the Declaratory Judgment count in *Bridges III* is virtually identical to the Declaratory Judgment count in *Bridges II*.  In *Bridges III* the plaintiffs request the same seven declarations requested in *Bridges II* and set forth on page 5 of this opinion. This Court has prepared an exhibit which pairs the paragraphs from *Bridges II*

13

(1:07 CV 2739)

with their corresponding paragraphs in *Bridges III*. This exhibit is attached to this opinion as

Exhibit A. Even a cursory review makes the point: All of these issues have been litigated to a

final judgment of dismissal with prejudice, a judgment affirmed by the Sixth Circuit.

To escape the unavoidable conclusion that they have lost on these issues, Plaintiffs argue

that the law has changed, and different courts have decided the same issues in a manner more

favorable for Plaintiffs. This is irrelevant. As the Supreme Court said, considering a similar

argument, "[E]ven though the determination may have been wrong, it is conclusive upon these

parties." *Ticor Title Insurance Co. v. Brown,* 511 U.S. 117, 121 (1994); *Federated Department*

*Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (and cases collected therein).

The Ohio Supreme Court reached the same conclusion in *Nat'l Amusements, Inc. v. City*

*of Springdale,* 53 Ohio St. 3d 60, 62 (1990) (collecting cases). "To hold otherwise would enable

any unsuccessful litigant to attempt to reopen and relitigate a prior adverse final judgment simply

because there has been a change in controlling case law. Such a result would undermine the

stability of final judgments and, in effect, render their enforcement conditional upon their being

'no change in the law.'" *Id., quoting Doe v. Trumbull Cty. Children Services Bd.*, 28 Ohio St. 3d,

128, 131 (1986).[3]

---

[3]

       Since the 6th Circuit ruling, both state and federal courts have followed Judge Oliver's analysis, finding that since a debtor is not a party to an assignment of a mortgage, the debtor has no standing to challenge its validity. *Bank of New York Mellon Trust Co. v. Unger*, 8th District, No. 97315, 2012 Ohio 1950, 2012 Ohio App. LEXIS 1723 (8th App. Dist. May 3, 2012); *Popov v. DeutscheNational Trust Co.*, as Trustee, 1:12-CV-00170, 2012 U.S. Dist. Lexis 155498, at *8 (N.D. Ohio October 30, 2012).

14

(1:07 CV 2739)

Plaintiffs do add two new requests in the Third Amended Complaint. The first is a request for a declaration that Aames has not complied with the "Pooling and Servicing Agreement," entered into between Aames and Deutsche. The addition of allegations regarding the "Pooling and Servicing" agreement does not save the Count; claim preclusion bars all claims which could have been brought.  As the Ohio Supreme Court explained,"Whether the original claim explored all the possible theories of relief is not relevant, 'It has long been the law of Ohio that an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or *might have been* litigated in the first lawsuit.'" *Brown*, *supra*, at 248, quoting *Natl. Amusements Inc. v. Springdale*, 53 Ohio St. 3d 60, 62 (1990).

When Ohio's high court first articulated its modern theory of *res judicata*, it anticipated that litigants would approach a second action with more or new evidence, grounds or theories; the court made it clear this strategy would not allow an end run around finality. The court said that *res judicata* "'applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action (1) To present evidence or grounds or theories of the case not presented in the first action, or (2) To seek remedies or forms of relief not demanded in the first action.'" G*rava*, *supra,* at 383, quoting Restatement (2d) Judgments § 25. Moreover, the argument regarding the Pooling Agreement is cumulative; like all  the arguments advanced in *Bridges II*, it merely seeks to establish some defect in the performance of agreements between Aames and Deutsche and Ocwen–agreements Judge Oliver  ruled the Plaintiffs have no standing to challenge.

The new argument that appears in Paragraph 93 asserts that Deutsche has not registered

15

 (1:07 CV 2739)

with the Ohio Secretary of State to transact business, and therefore has no standing to assert a claim. There are several problems with this argument. First, it could have been brought in the prior suit, and therefore is barred by claim preclusion. The second is that it is currently irrelevant. Plaintiffs do not cite a particular statute, but the registration statutes for foreign corporations, set forth in Ohio Rev. Code § 1703.01 through 1703.31, only preclude violators from making–not defending–claims. At this time Deutsche has not asserted any claims against any party in *Bridge III,* so its registration is irrelevant. Moreover, as Deutsche pointed out in its supplemental pleadings, when acting as a trustee of a securitized loan, Deutsche is not required to comply with the state licensing requirements. *Deutsche Bank National Trust Co. v. Ingle*, 2009 Ohio App. Lexis 3325 at *17 (8th App. Dist. August 6, 2009).

      **D.** ***The Recovery Sought in Count VIII  is Barred by Bridges II***

Count VIII requests recovery of amounts paid to Aames, Oswen or Deutsche. This cause of action involves the same nucleus of operative facts as *Bridges II*: it concerns the Promissory Note and Mortgage Deed, and the Plaintiffs' responsibility to make payment.  It  is a claim which could have been brought in Bridges II and is, therefore, barred by the principle of claim preclusion.

Either to avoid the effects of *res judicata*, or the statute of limitations, the Third Amended Complaint recites that Ocwen and Deutsche "concealed material facts" regarding the mortgage and note that Plaintiffs could not have discovered on their own "as more fully alleged in this Third Amended Complaint, and in Count VII for Declaratory Judgment, in particular."

Since all of the material facts necessary for declarations 1-7 were known to the Plaintiffs

16

(1:07 CV 2739)

in 2007, this leaves only the Pooling Agreement as a "new fact" Plaintiffs can claim was "concealed." Plaintiffs' generalized pleading is insufficient to establish fraudulent concealment and block application of claim preclusion. As the Sixth Circuit stated in *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2000),"In order to invoke the doctrine of fraudulent concealment, 'affirmative concealment must be shown; mere silence or unwillingness to divulge the wrongful activities is not sufficient.'" *Id*., quoting *Helmbright v. Martins Ferry*, No. 94-4089, 1995WL445730, at  *1 (6th Cir. July 26, 1995). Plaintiffs have nowhere alleged, with specificity, affirmative acts, tricks or contrivance to hide the existence of the Pooling Agreement.  As the Seventh Circuit noted in a similar case, "Since all claims arose from the same factual context and the appellants had sufficient knowledge to sue on one claim, they also had sufficient knowledge to sue on the rest of their claims. When a litigant files a lawsuit, the courts have a right to presume that he had done his legal and factual homework." *Car Carriers, Inc.* v. *Ford Motor Company*, 789 F.2d 589,596 (7th Cir. 1986).[4]  It is the Plaintiffs' responsibility to research and prepare their case.

Moreover, since any arguments for return of the funds paid that could be predicated on the Pooling Agreement could also be made based on the declarations already included, this is just an attempt to add another remedy arising out of the same transaction or occurrence. The Plaintiffs cannot do that under claim preclusion. *Grava, supra,*

---

[4]

Information regarding Aames Mortgage Trust 2001-1 Mortgage Pass-Through Agreement.  Certificates, series 2002-1 is in the public record, including information referencing the Pooling Agreement.
 http://www.sec.gov/Archives/edgar/data/1157427/000102024202000051/aa010210k.txt.

17

(1:07 CV 2739)

**II. The Statute of Limitations Requires Dismissal of Count II and Partial Dismissal of Counts III, IV, V and VI**

In an opinion dated August 28, 2009, this Court in *Bridges I* dismissed without prejudice Counts II (TCPA), Count V (Ohio Consumer Sales Practices Act), Count VI (negligence), Count VII (Slander of Credit), Count VIII (Spoliation of Evidence) and Count IX (Loss of Consortium) and the Plaintiffs' Counterclaim for Declaratory Relief and to Quiet Title. Plaintiffs did not appeal any of these decisions. On November 6, 2009, Plaintiffs refiled in state court their Counterclaim as a Complaint for Declaratory Relief and to Quiet Title.(Case 1:09-cv-02947, ECF 1-1). Plaintiffs did not re-file any of their other claims. As a consequence, the statutes of limitations ran on the claims that were not refiled.

The Sixth Circuit heard the Plaintiffs' appeal of *Bridges I,* limited to the issue of their FDCPA claim, reversed the district court opinion only with regard to the FCDPA claim, and remanded for further proceedings. (Case 09-4220, Document 006111288584 at 13). In the complaint filed on remand, the Plaintiffs once again asserted counts for violation of the TCPA, the Ohio Consumer Sales Practices Act, Slander of Credit, Spoliation of Evidence and Loss of Consortium.

The Court asked the parties to address the question of whether the statute of limitations had run with regard to the TCPA and state law claims. The Court will review Plaintiffs' arguments, applicable to all of these counts, before considering the impact of the statutory limitations on specific counts.

**A. _Neither Federal Rule 15 nor Equitable Tolling Apply to "Save" Plaintiffs' TCPA and State Claims_**

18

(1:07 CV 2739)

***1. Plaintiffs have cited no authority for the use of Federal Rule 15(b) and (c) to revive dismissed, expired claims***

Plaintiffs argue that the insertion of these causes of actions, which were dismissed without prejudice, and as to which the statute has run, should be allowed in this Third Amended complaint because they "relate to the same conduct, transaction or occurrence," as the FDCPA claim. Citing Federal Rule of Civil Procedure 15, Plaintiffs further argue that these counts, which were dismissed, and expired, should be deemed to "relate back" to the date of the filing of the original complaint. Plaintiffs cite no authority to support this argument. They have not put forward a single case in which claims were dismissed, the plaintiff failed to re-file the claims, the statute of limitations ran, and a court then permitted the claims to be added to a lawsuit, and "revived" by allowing them to relate back to the date of the filing of the first complaint. The Court rejects this novel use of Federal Rule of Civil Procedure 15.

***2. Plaintiffs have not met their burden of establishing the very exceptional circumstances that can justify equitable tolling.***

Plaintiffs' TCPA claim is predicated on federal law and is governed by the federal law of equitable tolling. Plaintiffs' remaining counts are based on Ohio law and are subject to the state law on equitable estoppel of the statute of limitations. Plaintiffs have not satisfied either the federal or stricter state law rules.

(a) Plaintiffs have not made a showing of "exceptional" circumstance beyond their control as required by federal law.

The Sixth Circuit in *Graham-Humphreys v. Memphis Brooks Museum of Art,* summarized the federal law of equitable tolling:

19

(1:07 CV 2739)

> The federal courts sparingly bestow equitable tolling. Typically equitable
> tolling applies only when a litigant's failure to meet a legally mandated deadline
> unavoidably arose from circumstances beyond the litigant's control...Absent compelling
> equitable considerations, a court should not extend limitations by even a
> day. *Johnson v. United States Postal Service,* 863 F. 2d 48 (Table) 1988 WL 122962,
> at *3* (6th Cir. Nov. 16, 1988).

*Graham-Humphreys*, 208 F. 3d 552 at 560 (6th Cir. 2000) (internal citations partially omitted*).*

The Plaintiffs bear the burden of persuading the court they are entitled to equitable

tolling. *Turner v. Lerner, Sampson & Rothfuss,* 776 F.Supp. 2d 498, 504 (N.D. Ohio 2011). This

is a heavy burden: "Sixth Circuit case law has consistently held that the circumstance which will

lead to equitable tolling are rare." *Id.,* citing *Souter v. Jones,* 395 F.3d 557, 590 (6th Cir. 2005).

The Sixth Circuit looks to five factors when the issue of equitable tolling arises: 1) lack

of notice of the filing requirement, 2) lack of constructive knowledge of the filing requirements;

3) diligence in pursuing one's rights, (4) absence of prejudice to the defendant, and (5) plaintiff's

reasonableness in remaining ignorant of the particular legal requirement. *Chavez v. Caranza,* 559

F.3d 486, 293 (6th Cir. 2009).

There is no suggestion here that Plaintiffs were ignorant of the requirement to refile the

claims. In fact, Plaintiffs timely refiled their declaratory relief and quiet title claims.

Plaintiffs–for whatever reasons--elected not to add the other counts to Bridges *II.*  Plaintiffs were

aware that, other than the single FDCPA claim, nothing was pending before the Sixth Circuit on

their *Bridges I* appeal: they refiled certain of the *Bridges I* claims in *Bridges II* while the appeal

of *Bridges I* was pending and, in their *Bridges I* appellate brief, acknowledged they didn't

challenge this Court's ruling the TCPA claim should be filed in state court. While Plaintiffs have

20

(1:07 CV 2739)

emphasized they acted *pro se* in their appeals, they had at least one, and sometimes two, counsel in 2009 and 2010, and were represented by counsel when they refiled the declaratory relief and quiet title actions as *Bridges II*.

Fundamentally, under federal law, the key issues in equitable tolling are the plaintiffs' diligence and plaintiffs' demonstration, "that some extraordinary circumstances stood in his way." *Credit Suisse Securities (USA) LLC v. Simmonds,* 132 S. Ct. 1414, 1419 (2012). Plaintiffs have shown neither.  Literally nothing stood in the way of their inclusion of these claims in *Bridges II*. This is not a "rare" or "compelling" case of "extraordinary circumstance." Since that is the case, following Sixth Circuit precedent, this Court will not extend the statute of limitations on Count II, the TCPA claim.

> (b) <u>Plaintiffs have not carried the burden of demonstrating fraudulent concealment; even if the Ohio Supreme Court were to accept alternate grounds for equitable tolling, it would not do so in this case.</u>

Ohio  has recognized equitable estoppel may bar enforcement of the statute of limitations. To establish equitable estoppel, "a plaintiff must demonstrate: (1) that the defendant made a factual misrepresentation; (2) that it is misleading; (3) that it induces actual reliance which is reasonable and in good faith; and (4) which causes detriment to the relying party. *Doe v. Blue Shield of Ohio* (1992), 79 Ohio App. 3d 269." *Livingston v. Diocese of Cleveland*, 126 Ohio App.3d 299, 303 (1998) (citations partially omitted). The Ohio Supreme Court has interpreted the first two elements to require a showing of "actual or constructive fraud." *State ex. rel. Ryan v. State Teachers Retirement Sys.*, 71 Ohio St. 3d 362, 368 (1994), *Livingston, supra*, at 315. To establish estoppel in relation to a statute of limitations defense, plaintiff must

21

(1:07 CV 2739)

> show either "an affirmative statement that the statutory period
> to bring the action was larger than it actually was" or  "promises to make a
> better settlement of the claim if plaintiff did not bring the threatened suit"
> or "similar representations or conduct"on defendant's part.

*Livingston*, *supra,* at 315, *quoting Cerney v. Norfolk & W. Ry. Co.*, 104 Ohio App. 3d 482, 488

(1995).

There is significant Ohio appellate authority restricting equitable tolling of the statute of to cases involving fraudulent concealment, misrepresentation, or promise of a better settlement offer. *See Id.*, *Sabouri v. Ohio Dep't & Family Servs.,* 145 Ohio App. 3d 651 (2001)*, State v. Carter,* 2008 WL 5228925 (Ohio Ct. App. Dec. 15, 2008)*, Sharp v. Ohio Civil Rights Com'n,* 2005 WL 5898899 (Ohio Ct. App. March 19, 2005). *See also Weikle v. Skorepa*, 60 Fed. Appx. 684 (6th Cir. 2003).

Plaintiffs have made no allegation that Defendants misrepresented the period of the statute, promised a better settlement if Plaintiffs delayed, or engaged in similar misconduct. Thus, Plaintiffs have completely failed to satisfy Ohio's established standard for equitable tolling of the statute of limitations

There is a Sixth Circuit case that departs from these strict limitations. The fact situation is unique and extreme: The funds at issue were in the control of the escrow holder and its wholly owned subsidiaries. A receiver was appointed but did not receive control over the escrow agent's bank records until 1999, and was not authorized to sue until May 2002. Suit was filed August 1, 2002. The court found the receiver acted as diligently as possible under the unusual

22

(1:07 CV 2739)

circumstances. *Wuliger v.Star Bank,* 2008 WL 2323887 (N.D. Ohio June 4, 2008).[5]

The Ohio Supreme Court has yet to speak on whether or not the state law may properly be expanded to include tolling predicated upon a basis other than fraudulent concealment or similar misconduct. Recently, however, Ohio's highest court emphasized the importance of enforcing statutes of limitation:

> Statutes of limitation foster important public policies: ensuring fairness to the defendant, encouraging prompt prosecution of causes of action, suppressing stale and fraudulent claims, and avoiding the inconvenience engendered by delay and the difficulty of proving older cases...We apply them consistently to ensure the proper administration of justice.

*Cundall v.U.S. Bank*, 122 Ohio St.3d 188, 192 (2009). Given the strict limitations and specificity of the state law's required proof, as well as the importance given to consistent enforcement of statutes of limitation, this Court predicts that even if the Ohio Supreme Court expands the range of estoppel, it will require demonstration of diligence and extraordinary circumstances outside of Plaintiffs' control. Again, Plaintiffs have made no such demonstration.

### 3. The Effects of the Statute of Limitations on Counts II, III, IV and VI.

<u>Count II</u> : Count II is based specifically on the telephonic contacts in connection with collection of the note. The last alleged act of telephone contact by defendants occurred in October 2007. (ECF 148 ¶¶ 29, 30). TCPA claims are subject to the four-year federal "catch-all" statute of

---

[5]

In addition, some Ohio appellate courts have used the federal formulation of equitable tolling in employment litigation, a distinguishable situation. *See McNeely v. Ross Corr. Inst.*, 2006 WL 294914 at *3 (Ohio Ct. App. Oct. 17, 2006).

(1:07 CV 2739)

limitations, set forth in 28 U.S.C.§ 1658 (a). This count was dismissed without prejudice in August of 2009, before the expiration of the four-year statute. The claim was not refiled, however, until May 31, 2012, more than four years after the last alleged TCPA violation. The claim is barred by the statute of limitation and Defendants' motion to dismiss Count II with prejudice is **GRANTED**

Count III: This count alleges claims under the Ohio Consumer Sales Practices Act (OSPCA). Given the present state of the pleadings it is not possible to discern the date of  the actions complained of in this count. The OCSPA has a two-year statute of limitations. Ohio Rev. Code §1345.10. Therefore, Count III is partially dismissed as to all actions, representations and damages before May 31, 2010. The only OSPCA claims that remain are those with respect to actions and damages on or after May 31, 2010.

Count IV: This count is labeled as Slander of Credit. Plaintiffs have insisted that this claim is not pre-empted by the Fair Credit Reporting Act, and Defendants have insisted that it is. If Plaintiffs are correct the one-year statute of Ohio Rev. Code § 2304.11 (a) is applicable; if Defendants are correct, the statute of limitations is governed by 15 U.S.C. § 1681p, which sets a limitation as the earlier of two years after discovery or five years after violation. Plaintiffs were obviously aware of the credit reporting problems when the initial complaint was filed in 2007. Therefore, any claims predicated upon Defendants' actions or representations that prior to May 31, 2010 are time-barred. Count IV is partially dismissed; the only slander of credit claims that remain only  relate to actions and damages on or after May 31, 2010.

Count V: This Spoliation of Evidence count refers to Defendants' custody and control of

24

(1:07 CV 2739)

all of the data, documents and other evidence and information regarding the number, frequency, and telephone numbers used to call the Plaintiffs. While Plaintiffs specify information relative to the Count II, the TCPA claims, Plaintiffs also make passing reference to "various claims set forth in this Third Amended Complaint in general." (ECF 148, at 770). Since Counts II, VII and VII have  been dismissed with prejudice, the spoliation count is also dismissed to the extent it is predicated upon the destruction of evidence and information relating to these Counts. Under the partial dismissals Count V is also dismissed to the extent it is predicated on the OSPCA and slander of credit claims prior to May 31, 2010, or the loss of consortium claim prior to May 31, 2008.

Count VI: This claim, for loss of consortium, is governed by a four-year statute of limitations set forth in Ohio Rev. Code § 2305.09. Thus, to recover under this count, Plaintiffs must rest their loss of consortium claim on conduct by Defendants on or after May 31, 2008. Count VI is partially dismissed as to all actions and damages prior to May 31, 2008.

Count VII: This claim is barred by *res judicata.* Defendants' motion to dismiss Count II with prejudice is **GRANTED**.

Count VIII: This claim is barred by *res judicata.* Defendants' motion to dismiss Count II with prejudice is **GRANTED**.

Count IX: This count for civil conspiracy is partially dismissed.  The conspiracy shown cannot be predicated on Counts II, VII or VIII, or the OSPCA and slander of credit claims prior to May 31, 2010, or any loss of consortium prior to May 31, 2008.

25

(1:07 CV 2739)

## CONCLUSION

To recap the Court's ruling::

- No motion was made as to Count I.

- Count II is dismissed with prejudice.

- Count III is partially dismissed. The Count is limited to actions and damages on or after May 31, 2010.

- Count IV is partially dismissed. The Count is limited  limited to actions and damages after May 31, 2010.

- Count V is partially dismissed. The Count is dismissed as evidence relating to  Counts II, VII and VIII. The Count is also dismissed as to evidence relating to actions and damages before May 31, 2010 on Counts III and IV, and, as to Count VI, to evidence relating to actions and damages before May 31, 2008.

- Count VI is partially dismissed. The Count is limited to actions and damages after May 31, 2008,

- Count VII is dismissed with prejudice.

- Count VIII is dismissed with prejudice.

- Count IX is partially dismissed. The civil conspiracy shown must be as to the Counts, as limited above. The conspiracy shown cannot be predicated on Counts II, VII or VIII, or the OSPCA and slander of credit claims prior to May 31, 2010, or any loss of consortium prior to May 31, 2008.

26

(1:07 CV 2739)

The Court also strikes from the prayer for relief items numbered 2, 7 and 8 of Plaintiffs

Third Amended Complaint. (ECF 148 at 779, 780).

Defendants must answer, respond or otherwise plead to the Third Amended Complaint by

by February 7, 2013. Any response by Plaintiffs to Defendants' filing is due February 15, 2013.

Given the proposed trial date, the parties should assume there will be no extensions of these dates.


IT IS SO ORDERED.


 January 28, 2013                              /s/ David D. Dowd, Jr.
Date                                          David D. Dowd, Jr.
                                              U.S. District Judge

27

(1:07 CV 2739)

EXHIBIT A

**Comparison of Third Amended Complaint in *Bridges III* (DOWD) With the Complaint for Declaratory Relief in *Bridges II* (OLIVER)**

IDENTICAL PORTIONS ARE UNDERLINED

### THIRD AMENDED COMPLAINT Bridges III (Dowd)

78. At all times relevant hereto, Deutsche Bank claims to be the current owner and holder of Lisa Bridge's Note and Mortgage originally entered into with Aames, on or about December 7, 2001. Deutsche claims to possess a valid and subsisting first mortgage upon the Plaintiffs' Property.

### COMPLAINT FOR DECLARATORY RELIEF Bridges II (Oliver)

*16. Upon information and belief, Deutsche at all times relevant hereto claims to be the current owner and holder of the Mortgage Note and Mortgage Deed, and claims to possess a valid and subsisting first mortgage on Plaintiffs' Property.*

################################################################################

### THIRD AMENDED COMPLAINT Bridges III (Dowd)

79. Contrary to Deutsche Bank's claims, and contrary to the conclusory statements in the Affidavit of Gina Johnson attached to the Counterclaim (Doc. 100) as Exhibit "E", in which Ms. Johnson simply attests that Deutsche Bank is the "holder" of the Note, Deutsche Bank does not have any legal status as a "holder" or "holder in due course" of the December 7, 2001 Note executed by Plaintiff Lisa Bridge and made payable to the order of Aames. The Note, attached hereto as Exhibit "3", on its face reflects that Aames remains the "holder" and "payee" of the Note, continuously from the date of execution and delivery to Aames on December 7, 2001, up to and including the date of the commencement of the Counterclaim on June 24, 2009. Alternatively, the Note attached hereto as Exhibit "4" is bearer paper, which Deutsche Bank is not the holder of, and provides Deutsche Bank no legal standing to foreclose the December 7, 2001 Mortgages on Lisa Bridge's residence.

28

(1:07 CV 2739)

**COMPLAINT FOR DECLARATORY RELIEF Bridges II (Oliver)**

*17. Contrary to Deutsche's claims, and the bare assertion that Deutsche is the "holder" of the Mortgage Note, under applicable Ohio law, Deutsche does not have any legal status as a "holder" or "holder in due course" of the Mortgage Note executed by Mrs.Bridge and made payable to the order of Aames. The mortgage Note, on its face, reflects that Aames remains the "holder" and "payee" of the Note, continuous from the date of execution and delivery to Aames on December 7, 2001, up to and including the present time.*

####################################################################

**THIRD AMENDED COMPLAINT Bridges III (Dowd)**

80. Deutsche Bank's assertion that the Corporation Assignment of Mortgage attached hereto as Exhibit "5",constitutes a proper negotiation of the Note, conferring "holder" or "holder in due course" status to Deutsche Bank, is clearly erroneous as a matter of law.

**COMPLAINT FOR DECLARATORY RELIEF Bridges II (Oliver)**

*18. The Corporation Assignment of Mortgage does not constitutes [sic] a proper negotiation of the Mortgage Note, conferring "holder" or "holder in due course " status to Deutsche as a matter of Ohio law.*

####################################################################

**THIRD AMENDED COMPLAINT Bridges III (Dowd)**

83. Pursuant to R.C. § 1303.32(A) (U.C.C. 3-302), the following criteria must be satisfied to establish "holder in due course" status: "(1) The instrument when issued or negotiated to the holder does not bear evidence of forgery or alteration that is so apparent, or is not otherwise so irregular or incomplete as to call into question its authenticity;" and, "(2) The holder took the instrument under all of the following circumstances: (a) For value; (b) In good faith; (c) Without notice that the instrument is overdue or that there is an uncured default with respect to payment of another instrument issued as part of the same series; (d) Without notice that the instrument contains an unauthorized signature or has been altered; (e) Without notice of any claim to the instrument as described in section 1303.60 of the Revised Code; (f) Without notice that any party has a defense or claim in recoupment described in division (A) of  section 1303.35 of the Revised Code."

(1:07 CV 2739)

**COMPLAINT FOR DECLARATORY RELIEF Bridges II (Oliver)**

*19. Pursuant to R.C. § 1303.32(A) (U.C.C. 3-302), the following criteria must be satisfied to establish "holder in due course" status: "(1) The instrument when issued or negotiated to the holder does not bear evidence of forgery or alteration that is so apparent, or is not otherwise so irregular or incomplete as to call into question its authenticity;" and, "(2) The holder took the instrument under all of the following circumstances: (a) For value; (b) In good faith; (c) Without notice that the instrument is overdue or that there is an uncured default with respect to payment of another instrument issued as part of the same series; (d) Without notice that the instrument contains an unauthorized signature or has been altered; (e) Without notice of any claim to the instrument as described in section 1303.60 of the Revised Code; (f) Without notice that any party has a defense or claim in recoupment described in division (A) of section 1303.35 of the Revised Code."*

###################################################################

**THIRD AMENDED COMPLAINT Bridges III (Dowd)**

84. Deutsche Bank cannot assert being a "holder" of the Note, let alone claiming "holder in due course" status, due to a clear and unambiguous failure of the proper negotiation and delivery of the Note pursuant to R.C. § 1301.01(T)(1) (U.C.C. 1-201),which defines a "holder" with respect to a negotiable instrument as either of the following: "(a) if the instrument is made payable to the bearer, a person who is in possession of the instrument", or,"(b) if the instrument is payable to an identified person, the identified person when in possession of the instrument".

. **COMPLAINT FOR DECLARATORY RELIEF Bridges II (Oliver)**

*20. Deutsche Bank cannot assert being a "holder" of the Note, let alone claiming "holder in due course" status, due to a clear and unambiguous failure of the proper negotiation and delivery of the Note pursuant to R.C. § 1301.01(T)(1) (U.C.C. 1-201), which defines a "holder" with respect to a negotiable instrument as either of the following: "(a) if the instrument is made payable to the bearer, a person who is in possession of the instrument", or, "(b) if the instrument is payable to an identified person, the identified person when in possession of the instrument".*

###################################################################

**THIRD AMENDED COMPLAINT Bridges III (Dowd)**

85. The requirements for negotiation are governed by R.C. § 1303.21 (U.C.C. 3-201), which provides in relevant part: "(A) "Negotiation" means a voluntary or involuntary transfer

30

(1:07 CV 2739)

of possession of an instrument by a person other than the issuer to a person who by the transfer becomes the holder of the instrument,"and "(B) Except for negotiation by a remitter, if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder...".

**COMPLAINT FOR DECLARATORY RELIEF Bridges II (Oliver)**

*21. The requirements for negotiation are governed by R.C. § 1303.21 (U.C.C. 3-201), which provides in relevant part: "(A) "Negotiation" means a voluntary or involuntary transfer of possession of an instrument by a person other than the issuer to a person who by the transfer becomes the holder of the instrument," and "(B) Except for negotiation by a remitter, if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder...".*

################################################################

**THIRD AMENDED COMPLAINT Bridges III (Dowd)**

86. The Notes attached as Exhibits "3" and "4" were never delivered, negotiated and/or indorsed by Aames to Deutsche Bank's "Order" as required by R.C. § 1303.01(A)(8) (U.C.C. 3-103), in such form sufficient to make Deutsche Bank a holder under Ohio law, nor has there been compliance with the "Pooling and Servicing Agreement" attached hereto as Exhibit "6", requiring "all intervening endorsements sufficient to show a complete chain of endorsements" to Deutsche Bank.

**COMPLAINT FOR DECLARATORY RELIEF Bridges II (Oliver)**

*22. The Mortgage Note was never delivered, negotiated and indorsed by Aames to Duetsche's "order" as defined in O.R.C. §1303.01 (A) (8) (U.C.C. 3-1-3) in such form sufficient to make Deutsche a holder under Ohio law.*

################################################################

**THIRD AMENDED COMPLAINT Bridges III (Dowd)**

87. Pursuant to R.C. §1303.24(A)(1) (U.C.C. 3-204) an Indorsement "…means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for any of the following purposes: (a) To negotiate the instrument…". The Notes attached hereto as Exhibits "3" and "4" were never negotiated or indorsed to Deutsche Bank's order by Aames, which remains the holder of the Note up to the present time.

(1:07 CV 2739)


**COMPLAINT FOR DECLARATORY RELIEF Bridges II (Oliver)**
*23. Pursuant to R.C. §1303.24(A)(1) (U.C.C. 3-204) an Indorsement "…means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for any of the following purposes: (a) To negotiate the instrument…". Exhibit "A" clearly establishes that the Mortgage Note was never negotiated or indorsed to Duetsche's order by Aames, which remains the holder of the Note up to the present time.*


**THIRD AMENDED COMPLAINT Bridges III (Dowd)**

88. The failure by Aames to negotiate and indorse the Note, and to comply with the "Pooling and Servicing Agreement" as alleged in ¶¶ 81, 82 and 86, does not confer "holder" or "holder in due course" status on Deutsche Bank, depriving Deutsche Bank of any right, title or interest in the Note, any payment thereto or proceeds thereof; and, therefore retains in Aames as the payee, all legal interest therein.


**COMPLAINT FOR DECLARATORY RELIEF Bridges II (Oliver)**
*24. The failure by Aames to negotiate and indorse the Note does not confer "holder" or "holder" in due course" status on Deutsche Bank, thereby depriving Deutsche Bank of any right, title or interest in the Note, any payment thereto or proceeds thereof; and, therefore retains in Aames as the payee, all legal interest therein.*

##################################################################

**THIRD AMENDED COMPLAINT Bridges III (Dowd)**
90. Further, the assignment of the Mortgage, without proper negotiation and endorsement of the Note, creates no right in Deutsche Bank to a lien or security interest in the Property, which under the particular facts of this case has severed or split the debt represented by the Note from the collateral secured by the Mortgage, rendering the Note an unsecured obligation, and the Mortgage allegedly held by Deutsche Bank, without constituting security for a valid debt.

**COMPLAINT FOR DECLARATORY RELIEF Bridges II (Oliver)**
*25. Further, the assignment of the Mortgage Deed, without  negotiation and of the  Mortgage Note, creates no continuing right in Deutsche Bank to a lien or security interest in the Property, which under the particular facts of this case has severed or split the debt represented by the Note from the collateral secured by the Mortgage Deed, rendering the Mortgage Note an unsecured obligation, and the Mortgage Deed held by Deutsche*

(1:07 CV 2739)

*without constituting security for a valid debt.*

#################################################################

**THIRD AMENDED COMPLAINT Bridges III (Dowd)**
 91. Plaintiffs are therefore entitled to a declaratory judgment that Deutsche Bank is not the "holder" or "holder in due course" of either Note attached as Exhibits "3" and "4" and that Deutsche Bank's claim to acceleration, payment and collection of the Note is unenforceable.

**COMPLAINT FOR DECLARATORY RELIEF Bridges II (Oliver)**
 *26. Mrs. Bridge is therefore entitled to a declaratory judgment that Deutsche is not the "holder" or "holder in due course" of the Mortgage Note attached as Exhibit "A" to the Complaint, and that Deutsche's claim to payment and collection of the Mortgage Note is unenforceable.*

#################################################################

**THIRD AMENDED COMPLAINT Bridges III (Dowd)**
 92. Plaintiffs are further entitled to a declaratory judgment that Deutsche Bank is the assignee only of the Mortgage on the Property, and is not a "holder" or "holder in due course" of the Note, and that Deutsche Bank does not have standing to foreclose the Mortgage on Plaintiffs' property by virtue of the severance and separation of the Note from the Mortgage, and that such action is *ultra vires*, and wholly without authority, right or justification, and that Plaintiffs are entitled to a declaration from this Honorable Court that Deutsche Bank lacks legal standing to foreclose on the mortgages on Plaintiffs' residence.

**COMPLAINT FOR DECLARATORY RELIEF Bridges II (Oliver)**
 *27. Plaintiffs are further entitled to a declaratory judgment that Deutsche Bank is the assignee only of the Mortgage Deed on the property and not as a "holder" or "holder in due course" of the Mortgage Note, does not have standing to seek to recourse against the Property, and that any such threatened or contemplated action is ultra vires, and wholly without authority, right or justification and that Plaintiffs are entitled to a declaratory judgment that the Mortgage Deed filed of record against the Property is a nullity and without any force and effect*

#################################################################

33

(1:07 CV 2739)


**THIRD AMENDED COMPLAINT Bridges III (Dowd): Prayer**

On Count VII Plaintiffs respectfully request this Honorable Court to enter a declaratory judgment in favor of Plaintiffs and against Deutsche Bank that Deutsche Bank:

(a) is not a holder or a holder in due course of the Note executed by Plaintiff Lisa Bridge on December 7, 2001, as that term is defined and interpreted under applicable Ohio law;

(b) is not in possession of the Note, which has not been delivered, negotiated or indorsed to Deutsche Bank;

(c) is only the bare assignee of the Open-End Mortgage filed of record on July 14, 2003, without any interest in the Note, and has no rights to enforce the collection or payment of the Note by foreclosure or otherwise;

(d) has no continuing right to a lien or security interest in the Property by virtue of the severance of the Note from the Mortgage, for which the Mortgage is no longer a valid and subsisting lien on the Property;

(e) lacks standing and capacity to seek foreclosure, and is not the real party in interest for the Counterclaimant previously asserted at Doc. 100, and having failed to register with the Ohio Secretary of State, can not maintain any claim in any court of the State of Ohio, including the Honorable United States District Court for the Northern District of Ohio.

(f) entering a declaratory judgment in favor of Plaintiffs and against Deutsche Bank that the Mortgage filed of record on July 14, 2003 is not a valid and subsisting mortgage upon the Property, and is void and unenforceable;

(g) entering a declaratory judgment in favor of Plaintiffs and against Deutsche Bank and quieting title to the Property in the name of Plaintiff Lisa Bridge; and, ordering Deutsche Bank to cancel and release the Mortgage of record within ten days of the entry of a final judgment herein;

(h) entering a declaratory judgment in favor of Plaintiffs, that Deutsche Bank is not the "Trustee" for Lisa Bridge's December 7, 2001 Note originally made to Aames, because of the failures to comply with the "Pooling and Servicing Agreement" attached hereto as Exhibit "6";

(i) entering a declaratory judgment in favor of Plaintiffs that the Notes attached hereto as Exhibits "3" and "4" do not show "all intervening endorsements sufficient to show a complete chain of endorsements to" Deutsche Bank; and,

(j) entering such other preliminary and permanent relief as is necessary and appropriate to prohibit Deutsche Bank, and all others acting in concert with it, from any attempts to enforce liability under the Note and Mortgage against Plaintiffs.

(1:07 CV 2739)

**COMPLAINT FOR DECLARATORY RELIEF Bridges II (Oliver)**

Wherefore, Plaintiffs pray for the following relief:

A. Entering final judgment in favor of Plaintiffs and against Aames and Deutsche on the Complaint.

B. Entering a declaratory judgment in favor of Plaintiffs and against Aames and *Deutsche that*:

(1) Deutsche is not a holder or a holder in due course of the Mortgage Note executed by Plaintiff Lisa Bridge on December 7, 2001, as that term is defined and  interpreted under applicable Ohio law;

(2) Deutsche is not in possession of the Mortgage Note, which has not been delivered, negotiated or indorsed to Deutsche by Aames;

(3) Deutsche is only the bare assignee of the Open-End Mortgage filed of record on December 12, 2001, without any interest in the Mortgage Note, and has no rights to enforce the collection or payment of the Mortgage Note by foreclosure or otherwise;

(4) Deutsche has no continuing right to a lien or security interest in the Property by virtue of the severance of the Mortgage Note from the Mortgage Deed, for which the Mortgage is no longer a valid and subsisting lien on the Property;

C. Entering a declaratory judgment in favor of Plaintiffs and against  Deutsche and Aames that the Mortgage Deed filed on December 12, 2001 is not a valid and subsisting  mortgage on the Property, and is void and unenforceable.

D. Entering a declaratory judgment in favor of Plaintiffs and against Deutsche and Ames and quieting title to the Property in the name of Plaintiff Lisa Bridge; and, ordering Deutsche and/or Aames to cancel and release the Mortgage Deed of record within ten days of the entry of a final judgment herein;

E. Entering such other and permanent relief as is necessary and appropriate to prohibit Deutsche and/or Aames, and all others acting in concert with them, from any attempts to enforce liability under the Mortgage Note and Mortgage Deed against Plaintiffs and Property.